KAUFFMAN MILLING CO. v. STUCKEY.

1. COUNTER-CLAIM—INSUFFICIENT FACTS.—A counter-claim which alleges that defendant was damaged one hundred and fifty dollars, by reason of dissatisfaction of his customers with him on account of the defective quality of flour which he had purchased from plaintiffs and furnished to said cus-

tomers; and was further damaged two hundred dollars, by delay in business and trouble in buying other flour for his customers, by reason of the shipment to him by plaintiffs of unfit flour; *does not state facts sufficient to constitute a cause of action,* and may be so held on demurrer.

2. CONTRACT—EVIDENCE.—In action on contract made by plaintiffs, through their agent, for sale of flour to defendant, defendant cannot prove other contracts for sale of flour made by the same agent at about the same time.

3. IBID—IBID.—And in such case, the quality of the flour sold being in issue, plaintiffs were improperly permitted to prove by such agent that flour of the same brand, sold to other parties at the same time, had given satisfaction.

4. SALE BY SAMPLE—EVIDENCE.—There was no error in charging the jury that the defendant must show, by the preponderance of the evidence, how much of the flour purchased had come up to sample, and was entitled to relief only to the extent of the defect.

5. IBID—RECISSION.—The judge correctly charged, " that the defendant has no right to rescind, unless (1) there was an agreement at the time he purchased, that if the flour did not come up to sample, he could return it; or (2) where there has been fraud; or (3) where there has been an entire failure of consideration." But it is not required of the buyer to make actual tender of the article to the seller, if they are in different localities; an offer to return is, in such cases, equivalent to tender.

6. IBID—IBID—MEASURE OF DAMAGES.—There was no error in charging, that " if the defendant has satisfied you that there has been a failure of consideration—that is, that this flour did not come up to the sample by which he purchased—then the question arises, how much of that flour failed to come up to the sample? and the defendant must show what quantity, if any, has failed to come up to the sample. If the failure is only in part— that is, if only some of the barrels fail—then you must estimate that amount, and take it off the value—deduct that amount from plaintiff's claim. If the defendant has satisfied you that there has been a failure of consideration, if it is an entire failure, he is entitled to nothing."

7. SALE OF CHATTELS.—There was no error in refusing to charge, " that a vendor, who sells an article for a particular purpose, cannot recover, if the article fails to answer the purpose for which it was sold," where there was no evidence in the case to show that the flour had been sold for any particular purpose.

8. SETTLEMENT OF CASE.—The Circuit Judge is invested with exclusive control over the settlement of a " Case " for appeal.

Before WITHERSPOON, J., Spartanburg, January, 1891.

This was an action by the Kauffman Milling Company against J. K. Stuckey. The judge charged the jury as follows:

Now, where is the burden in this case? The plaintiff alleges that he sold the property, the flour, at a certain price, a certain quantity, and the defendant admits that he has not paid for it. He comes in affirmatively, and takes upon himself the burden of showing why he ought not to pay for it. Therefore, it is incumbent upon the plaintiff, he must satisfy you by the preponderance of the evidence, the greater weight of the evidence, according to the estimate that you give it, you being the sole judges of the testimony, the value of the evidence. I say he must satisfy you by the preponderance of the evidence, the greater weight of the evidence, that this flour did not come up to the sample. I say that burden is upon him. Whether or not he has maintained that position, whether he has satisfied you or not upon that point, that is merely a question of facts, a matter of testimony.

As has been suggested to you by counsel, when a person pays a sound price for personal property, chattels, the law implies a sound commodity, and there is no doubt about that. When the party purchases by sample, the commodity is not present for the purchaser, the party attempting to purchase, to examine for himself, but a sample is produced which the seller intends to represent the quality and character of the article, then the article, the commodity, bought must come up to that standard— that is, to that sample—in order to comply with the seller's undertaking. Whether or not the flour delivered by the plaintiff to the defendant, Stuckey, has or has not come up to the standard; whether a portion of it, or the whole of it, has failed to come up to the standard; what proportion; those are matters entirely of fact for you. The defendant must not only show that some portion of the flour failed to come up to the standard— that is, the sample—but it is incumbent upon him to show how much of it, in order to entitle him to relief; and he is only entitled to relief to the extent of the commodity that he shows affirmatively—that is, by the preponderance of the evidence— that has failed to come up to the standard—that is, to the sample.

Something has been said about tender—that is, tendering back—rescission of contract. In the first place, it takes two

2—37

consenting minds or mutuality of agreement to make a contract. That is, between you and myself, we are not bound unless there is a mutuality of agreement as to the matter of contract. That contract can only be rescinded by our consent. We can annul it. We made the original contract; we are competent to make that and did make that contract. We are also competent to annul it—that is, to rescind it and to absolve ourselves from the duties and liabilities arising under the contract.

It has been decided in this State that the purchaser of a chattel—for instance, flour, a barrel of flour—may by tender back, by offering to return it, rescind the contract without the consent of the seller in the following cases, and I charge you that these are the cases in which a tender back rescinds the contract, and it must come under one of these classes : 1. Where the right to return the property was a part of the original contract. Now, was there any contract between these parties that this property, if it did not come up to the sample, should be returned ? That is a question of fact for you. That is one form. 2. Where there has been fraud. Fraud vitiates everything, under any and all circumstances; and if there is any evidence that the seller practiced fraud, that would vitiate the contract and relieve the other party, because the law says a man shall not take advantage of his deception or fraud; cannot under any circumstances take advantage of his own wrong— that is, of his fraud. 3. And the third instance is where there has been entire failure of consideration. You see now the three facts, where, under the agreement, the purchaser has the right to return it and rescind the contract, where that was a part of the written contract; second, or where there has been fraud upon the part of the seller, as alleged in this case; and third, where there has been entire failure of consideration.

Has there been any tender of this flour back by Mr. Stuckey to the plaintiff? If so, when was it made? You are the judges of that, and it is for you to say. Was it a conditional or an unconditional tender of it? That is for you to say. It must be unconditional, in order to have the effect of a tender. But when a man tenders a piece of property back to a party under an agreement of sale, he must not exercise the right of owner-

ship of that property; he must not dispose of it, or any portion of it, after the tender. If he does, he waives all benefit that he would derive from the tender. Now, you apply the facts. It is for you to say whether a tender was made. If there was any tender, whether or not the defendant, Stuckey, disposed of any of the property subsequent to the tender made.

If this property, this flour, came up to the sample, then the plaintiff is entitled to recover a judgment for the amount he claims due—that is, for the $204.50, that is the whole, less $40.50 freight; I say now, unless the defendant has satisfied you that there has been a failure to come up to the standard—that is, I mean, to the sample; if he has failed to satisfy you upon that point, the plaintiff is entitled to recover for the whole amount— that is, the full value according to the contract, less the freight. If the defendant has satisfied you that there has been a failure of consideration—that is, that this flour furnished here did not come up to the standard, that is, to the sample by which he purchased—then the question arises, how much of that flour failed to come up to the sample, and the defendant must show what quantity, if any, has failed to come up to the standard. If he has shown you, if you are satisfied by the preponderance of the evidence, that it has failed to come up to the standard, has there been a partial or a total failure, an entire failure, of consideration?

If the contract has been rescinded, under the instructions I have given you, then the defendant is not liable, and cannot be made liable. If the contract has not been rescinded, and there has been a partial failure of consideration, he is entitled to have the amount of the purchase of this flour reduced to the extent of the failure of this flour to come up to the sample or standard. If it is only in part—that is, only some of the flour, some of the barrels, fail—then you must estimate that amount, and take off of the value at its true value, deduct that from the amount which the plaintiff claims. And if it is an entire failure of consideration—that is, if it is worthless, of no value at all to him—then there is a rescission of contract; the plaintiff cannot recover anything against the defendant in that event, because, if the article is of no value at all, and the plaintiff sent him flour

of that character, he is not responsible for anything at all. If the contract has been rescinded, he is not liable. If there is a total failure of consideration, he is not liable—that is, if the article is worthless. If there is any fraud, he is not liable.

But if the defendant has failed to satisfy you that it was entirely without consideration, although there was a partial failure of consideration—that is, if the flour did not come up to the standard—then it is for you to say how far it failed to come up to the standard; in other words, what he shall pay for it in its unsound condition, if you conclude that the flour was unsound, and failed to come up to the standard or sample. You see, if he is not entitled to rescind, he must account for the value of it according to proof, and the plaintiff is entitled to a verdict for the amount of the true value of the article as furnished; he is entitled to a verdict for the price as stipulated, unless the defendant has shown you that there has been a failure of consideration. If the defendant has satisfied you that there has been a failure of consideration, if it is an entire failure, he is entitled to nothing; if it is a partial failure, the defendant is entitled to have the amount of the judgment against him reduced to the extent of the failure in the article as proved herein, the value of the flour as proved here.

*Messrs. Duncan & Sanders,* for appellant.

*Messrs. Bomar & Simpson,* contra.

November 18, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. This was an action tried before his honor, Judge Witherspoon, and a jury, at the January, 1891, term of the Court of Common Pleas for the County of Spartanburg. The complaint was as follows: 1. That at the times hereafter mentioned the plaintiff was and is still a corporation duly chartered under and by virtue of the law of Missouri, and is located and doing business in the city of St. Louis, in said State. 2. That on or about the 24th day of October, 1888, the plaintiff sold and delivered to defendant on account twenty-five barrels of flour of the brand "Victoria," at $5.05 per barrel,

and twenty-five barrels of flour of the brand "Gem," at $4.75 per barrel, amounting in the whole to the sum of two hundred and forty-five dollars, which the defendant agreed to pay therefor; that the defendant has paid the freight on said flour, to wit: forty and 50-100 dollars, and that there is due and owing to the plaintiff from the defendant on said account the sum of two hundred and four and 50-100 dollars.

The answer was as follows: 1. He admits the allegations contained in paragraph 1 of the complaint, together with so much of paragraph 2 as alleges that the defendant bought the flour mentioned in the complaint and at the prices set out in said paragraph. 2. Defendant also admits that he paid the freight on the flour as alleged, and says he has never paid the plaintiff, as he agreed to do.

3. For a defence, the defendant says: That he purchased said flour from plaintiffs by sample through one J. C. Boyd, the agent of plaintiffs. That when said flour arrived at Spartanburg, the defendant, supposing and believing that said flour was sound and good and fit for family purposes, and believing that it would bake well and make a good and wholesome bread, had it hauled up to his store where he was merchandizing, paid the freight thereon, amounting to the sum of forty dollars and fifty cents, and offered said flour to his customers for sale. All this being done before defendant ascertained that said flour was not sound and unfit for the purposes for which it was bought. 4. That said flour did not come up to the sample by which it was sold, was not sound and good flour, and was unfit for family use, and would not make up into good, sound, and wholesome bread. 5. That as soon as defendant ascertained that said flour was not good, and that it would not bake up into good, sound, and wholesome bread, and that it did not come up to sample by which it was bought, he offered to return it, or keep it at a proper reduction, which said offers were refused by the plaintiff.

For a first counter-claim, defendant says: 1. That he adopts the allegations of paragraph 3 of this answer as the first allegation of this counter-claim, and alleges that the forty and 50-100 dollars paid by defendant as freight on said flour, was money paid for the benefit and use of the plaintiff. 2. That no part

of said sum has been repaid by the plaintiff, but the same is due and owing by them to defendant.

For a second counter-claim, defendant alleges: 1. That soon after he received said flour, he offered it for sale to his customers, and sold and delivered some of it to those accustomed to trade with him; that said flour did not give satisfaction to his said customers, and caused them to become dissatisfied with defendant, to defendant's loss and injury, in the sum of one hundred and fifty dollars.

For a third counter-claim, defendant says: 1. That by reason of the flour being unfit for family use and of its failing to bake into good and wholesome bread, defendant was for a time unable to supply his customers with flour, as he had hoped to do, and was forced to purchase other flour from other places, and was greatly delayed and hindered in his business, to defendant's loss and damage two hundred dollars. Wherefore the defendant prays judgment against the plaintiff for the sum of three hundred and ninety dollars, &c.

The plaintiff demurred[1] to the last two counter-claims, because they did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the Circuit Judge. During the progress of the trial several exceptions were taken to the rulings of the Circuit Judge as to the admissibility of testimony, an oral request to charge was presented, and the jury found a verdict for $195.50 for plaintiff. After judgment, defendant appealed to this court on the following grounds:

It is respectfully submitted, his honor erred: 1. In sustaining the demurrer of the plaintiff to the 2d and 3d counter-claims of the answer of defendant.

2. In not admitting in evidence the correspondence between Dillard & Gilliland and the plaintiff.

3. In allowing J. C. Boyd to testify that he had sold the flour rejected by Dillard & Gilliland to parties at Woodruff, and that it gave them satisfaction—no complaints.

4. In allowing J. C. Boyd to testify that the parties to whom he sold the flour that had been rejected by Dillard & Gilliland made no complaints.

---

[1] Orally at the trial.—REPORTER.

5. In allowing J. C. Boyd to testify that about the same time that he sold the flour to Stuckey and to Dillard & Gilliland, he sold flour of the same brand to other parties, and that it gave them satisfaction.

6. In allowing the witness, J. C. Boyd, to testify that, during the same month, he had sold a good deal of the same brand of flour to other parties, and that it gave perfect satisfaction.

7. In charging that the defendant must not only show that some of the flour failed to come up to sample, but it is incumbent upon him to show how much of it failed to come up to the sample, in order to entitle him to relief, and he is only entitled to relief to the extent of the commodity that he shows affirmatively—that is, by the preponderance of the evidence, that has failed to come up to the standard.

8. In charging that the defendant has no right to rescind, unless, 1st. There was an agreement at the time he purchased, that if the flour did not come up to the sample, he could return it; or 2d. Where there has been fraud; or 3d. Where there has been an entire failure of consideration.

9. In charging: If the defendant has satisfied you that there has been a failure of consideration—that is, that this flour did not come up to the sample by which he purchased, then the question arises, how much of that flour failed to come up to the sample, and the defendant must show what quantity, if any, has failed to come up to the sample.

10. In charging: If the failure is only in part—that is, if only some of the brands failed—then you must estimate that amount, and take it off the value, deduct that amount from plaintiff's claim.

11. In charging: If the defendant has satisfied you that there has been failure of a consideration, if it is an entire failure, he is entitled to nothing.

12. In charging, in substance: That when a lot of flour is bought by sample, the burden is on the vendor to show how much of the flour failed to come up to sample.

13. In not charging that a vendor, who sells an article for a particular purpose, cannot recover if the article fail to answer the purpose for which it was sold.

14. We also except to the rulings of his honor in ordering the letters from plaintiff to Dillard & Gilliland printed in the "Case."

We will now briefly consider these exceptions in their order.

I. A counter-claim being a cross-action, in effect, it would seem that the defendant should be required to state the facts that enter in to make up such cross-action; and if he neglects to do so, it is in the power of the plaintiff to test its sufficiency by demurrer on that ground. In the case at bar, it seems to us that the defendant has failed in this particular in both the 2d and 3d counter-claims, and, therefore, the Circuit Judge did not err in so adjudging.

II. The contract set up in the complaint and admitted in the answer was that made by the plaintiffs through their agent, J. C. Boyd, with the defendant. Such being the case, what relevancy did the contract made by the plaintiffs through their same agent with Dillard & Gilliland, and which was in no wise related to that of the parties to the action at bar, bear to the contract here sued on? We cannot see. This exception is over-ruled.

III. The 3d, 4th, 5th, and 6th exceptions relate to the testimony of plaintiffs' witness, J. C. Boyd, growing out of his dealings as plaintiffs' agent with other parties in no wise connected with defendant. The Circuit Judge was clearly in error in admitting such testimony. It made no difference how fair plaintiffs were in their dealings with people other than defendant, for the issues tendered by the defendant to the plaintiffs in the case at bar were strictly confined to the dealings between them. To such issues, therefore, each side should have been as strictly confined. No question of criminal intent was involved in these issues, but simply a failure to comply with a contract was in question. We can easily see how tastes of men may differ; what to one man is good wholesome bread is not to another. Why should the taste of one man not concerned in a controversy before the court be forced upon an unwilling party whose taste was different? Besides, who was able to say that the grade of flour in each case was the same? These exceptions must be sustained.

IV. We do not see any error in the matter embodied in the 7th exception. Here, when the plaintiff alleged his cause of action, the defendant admitted it, but sought to avoid it by matters alleged in the answer to that end. When the proofs were introduced by the defendant, who had become the actor, he showed that he had sold twelve barrels out of the fifty sold to him by the plaintiffs, and that out of the twelve sold by him to his customers, only a part of one barrel had been returned. He alleged in his answer that the plaintiffs sold by sample, and that the flour failed to come up to that standard. His proofs only related to the twelve barrels so sold and one or two other barrels that he had sampled. Under these circumstances, it became the duty of the presiding judge to charge the jury on the law as fitted to the facts in evidence. That is all that he ought to do. It prevents any confusion in the minds of the jury, and it serves to enable them to apply the law to the facts, so that their verdict may be responsive thereto. If the defendant claimed that the flour, the fifty barrels, failed to come up to the standard, the sample, it was necessary that he should establish affirmatively by a preponderance of the testimony that such was the case. How could he do this when by his testimony thirty-six of those fifty barrels of flour were in his store unopened and unsampled? The human imagination is an important factor in man's happiness, but its use in determining facts in our courts of justice cannot be commended.

V. Of the matters complained of in the 8th exception, it will, in answer, be sufficient to state that the Circuit Judge but followed the decision of our court of last resort in the case of *Carter & Harden* v. *Walker*, 2 Rich., 40. Yet we ought to say that, in commercial transactions, the buying and selling of merchandise, the *actual* tender of the article purchased by the buyer to the seller could scarcely be required. It is true, a chattel, such as a horse or the like, can be actually tendered, when the parties contracting are together; but in the ramifications of trade, with the selling merchant in New York and the merchant buyer in the city of Spartanburg, for instance, with negotiations connected with the sale of merchandise conducted by correspondence, there can scarcely be a rule that would re-

quire, in order to work the rescission of a contract between the two, that the offer back of the goods, which is the tender, must be made when face to face. The rule is answered when the goods as sold are capable of being restored and are offered to be restored by the purchaser to the seller. In the case at bar, the defendant had sold nearly one-fourth of the goods. How could he make a tender so as to rescind the contract? That was not in his power. Hence, when the judge laid down the law as he did, in the light of defendant's testimony, he wrought no injury to the defendant here.

VI. There was no error in the charge, as complained of in the 9th exception. The law is correctly laid down by the Circuit Judge. VII. Nor was there any error in the charge, as complained of in the 10th and 11th exceptions. The law was properly stated by the Circuit Judge. VIII. We fail to discover in the case that the Circuit Judge charged as is represented in the 12th exception.

IX. As to the 13th exception, it is sufficient to say there was no proof offered by either side that the contract entered into between the plaintiffs and defendant did more than to bind the plaintiffs to furnish the defendant with fifty barrels of flour up to a certain standard—that of sample, &c. Certainly no stipulation appears in the case whereby the plaintiffs can be charged with a duty to render to defendant fifty barrels of flour for a particular purpose. We say this much to relieve a most painstaking and able attorney from indulging in any reflection upon himself for not having presented a written request to charge, instead of presenting it orally. There was no error in the judge, and the oversight of the attorney has not injured his case.

X. This last, 14th, exception it is not necessary for us to pass upon, as the Circuit Judge is invested with the exclusive control over the settlement of a "Case" for appeal.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the cause be remanded to the Circuit Court for the purpose of a new trial.