7543

EUREKA ELASTIC PAINT CO. v. BENNETT-HEDGPETH CO.

1. CONTRACTS—RESCISSION—WARRANTY.—Where goods are sold under express or implied warranty the law of warranty and not of rescission of contract applies. When contract may be rescinded stated.

2. CONTRACTS—EVIDENCE—WRITING—PAROL.—Where a written order for goods is silent as to warranties, a warranty may be proved by parol, and parol misrepresentation of the seller in relation to the consideration of the contract whether made in fraud or mistake is a defense. *Coats* v. *Earley*, 46 S. C., 227, and *Lumber Co.* v. *Evans*, 69 S. C., 93, distinguished from this case.

3. CONTRACTS.—The purchaser has a reasonable time before acceptance to examine goods and when the nature of the shipment is such that an examination could not satisfactorily be made before taking possession, the purchaser should be allowed a reasonable time thereafter in which to accept.

Before GARY, J., Marlboro, Fall term, 1908.   Reversed.

Action by Eureka Elastic Paint Company against Bennett-Hedgpeth Co.   From judgment directed for plaintiff, defendant appeals.

*Messrs. Livingston & Muller* for appellant, cite: *When right to recover should have been exercised:* 24 Ency., 1111, 1089, 1081; 15 S. C., 118; 15 Ency., 1230; 23 Ency., 585; 24 Ency., 1088, 1118; 57 S. C., 507.

*Messrs. Clark & Clark* and *Newton & Owens,* contra.

*Messrs. Clark & Clark* cite: *Contract complete on delivery:* 59 S. C., 588.   *Tender does not rescind contract:* 46 S. C., 229.

*Messrs. Newton & Owens,* cite: *Rescission not available under general denial:* 27 S. C., 621; 47 S. C., 138.   *When contract may be rescinded:* 2 Rich., 40; 37 S. C., 7; 40 S. C., 110; 43 S. C., 257; 72 S. C., 368; 74 S. C., 202.   *Conditional tender not effective:* Hunt on Tender, sec. 239; *Doty* v. *Crawford,* 39 S. C.

April 9, 1910.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. This is an action on account for a lot of paints sold and delivered, and the appeal is from a judgment on a verdict directed by the Court in favor of plaintiff for $426.56, for the full amount claimed.

The plaintiff corporation is a manufacturer of paints, with its principal place of business at Chicago, Ill., and the defendant corporation conducts a mercantile business at Clio, S. C. On February 14, 1906, defendant gave a written order signed by defendant and addressed to plaintiff, requesting immediate shipment to defendant at Clio, S. C., of the articles of paint mentioned in the order "at prices, terms and conditions stated," terms, four months or one per cent. per month, F. O. B. at Chicago, one-half freight allowed. The order contained a statement "positively no goods consigned," then follows a list of articles showing the color of paint, number and size of cans, and describing the various classes or lots, as Eureka house paint, Eureka floor paint, shingle paint, wagon paint, buggy paint and so forth.

The order shows the name of the salesman as Person, and at the foot just above the signature of defendant are these words: "We understood that no terms or conditions are recognized only those expressed in this order, and the same is not subject to countermand." The order was not signed by plaintiff.

This bill amounted to $409.09. On March 18, 1906, there was another order by mail for paints amounting to $32.50. This order was not signed by any one except Person and contained no reference to terms and conditions, except "60 days 2 per cent. cash 10 days," "one-half freight allowed."

The defendant alleged payment of freight as a counter claim and testified that he paid $38.45 for freight. Hence we may say in passing that if verdict should have been directed the amount should not have exceeded $422.37.

The motion to direct a verdict for plaintiff was made upon the ground that the paint arrived on the 22d or 24th of March, and that defendant accepted the goods and made no objection until April 14. The Court in granting the motion held that the defendant accepted the goods at the prices

agreed on, that the contract was complete and in writing, and the defendant's tender of the goods was conditional.

The defendant submitted testimony to the effect that the goods arrived on the 24th of March, were taken from the depot on the 26th of March, and on next day notice was given over long distance telephone to the salesman, Person, that the goods were not as represented and would not be accepted. Person testified that he had telephone communication with defendant after the arrival of the goods, but he did not fix the time nor state the nature of the communication.

J. A. Bennett, the president and secretary of defendant company, testified that plaintiff's salesman in the negotiations for sale, represented and guaranteed the paint to be pure white lead, zinc and linseed oil paint.

G. G. Newton testified that he heard the agent of plaintiff represent to Mr. Bennett that the paint was composed of white lead, zinc and oil, and that it would weigh as much as other standard paint.

After waiting to hear further from Person, defendant sent the following letter to plaintiff:

"April 13, '06.

"Eureka Elastic Paint Co.,
          Chicago, Ill.

"Dear Sirs:

"We had a conversation with your Mr. Persons ten or fifteen days ago over long distance phone regarding some questions that have come up regarding your paint, etc., and Mr. Persons said he would come over in a few 'days and straighten everything out. However, we have heard nothing further from Mr. Persons. We understand Mr. Persons has been ill recently, but we have waited for him to come over as long as we can.

"Now your Mr. Persons sold us your paint, etc., and guaranteed it to be the same weight, quality and measure as Sherwin-Williams, Patterson & Seargent or any of the

other high grade paints. We have thorougly investigated your paint and we regret that we have not found it as it was represented to be.

"We cannot use any of the paint and ask that you advise disposition at once. Under no circumstances can we use any of the goods, and it will be useless for you to make us any proposition to keep same. The damage done us has been considerable, but we are not going to ask anything like full amount. We have paid freight on your goods to amount of $38.45, and if you will send us check for that amount we will reship the goods per your order.

"Awaiting your reply.

Yours truly,

Bennett-Hedgpeth Co."

On April 17th, 1906, plaintiff wrote a letter to defendant acknowledging receipt of this letter, and without disputing what defendant alleged as to the notice given to Person and as to the representations made by him, sought to convince defendant that the paints sold were all right and suggested that defendant test the paint by having some prominent building thoroughly painted according to directions by plaintiff's sample card. Combatting the objection to the weight of the paint plaintiff in his letter declared: "Analysis shows however, that most of these heavy paints weighing anywhere from sixteen to twenty pounds to the gallon are composed very largely of barytes, a cheap adulterant possessing absolutely no value as a painting pigment.

"Its specific gravity is about the same as white lead, but it possesses no affinity for linseed oil and is without opacity or covering capacity."

On May 3, 1906, defendant again wrote plaintiff for advice regarding the disposition of the paint, stating that unless advised to the contrary goods would be returned to plaintiff on May 15th. In this letter no request was made of plaintiff to send check for the freight before reshipment. Plaintiff replied to this letter on May 8, 1906, and

stated that they regarded the paints as the property of defendant absolutely, and declined to give any instructions as to the deposition of them. In this letter plaintiff again referred to the objection to the paint on the ground of weight, saying: "As a matter of fact all of the extra heavy paints which we have ever examined owed their weight to good old $16.00 per ton barytes. This as you probably understand is a mineral of about the same specific gravity as lead, but it is very refractory, so that it is a difficult matter to grind it very fine. Aside from this it is practically transparent and possesses no affinity for linseed oil which is found in no combinations of lead and zinc. It is, therefore, practically worthless as a paint pigment."

Defendant sent two cans of the paint to Dr. Francis L. Parker, Jr., for analysis, and Dr. Parker was examined on the trial and gave the following as his analysis:

| | |
|---|---|
| Moisture | 10.82 per cent. |
| Mineral Oil | 9.15 per cent. |
| Linseed Oil | 24.34 per cent. |
| Zinc Oxide | 30.25 per cent. |
| White Lead | 2.57 per cent. |
| Sulphate of Lead | 2.53 per cent. |
| Barytes (barium sulphate) | 17.05 per cent. |
| Calcium Sulphate | 1.25 per cent. |
| Calcium Carbonate | 0.55 per cent. |
| Aluminum Silicate | 0.35 per cent. |
| Silicon Dioxide | 0.75 per cent. |
| Barium Carbonate | (trace)." |

Captain H. G. LaMotte, a contractor and builder for twenty or twenty-five years, having considerable experience with paints, testified that a paint containing seventeen per cent. of barytes would be a cheap paint, and that no pure paint has barytes in it, and that a paint containing the ingredients of the above analysis could not be called a pure white lead, zinc and linseed oil paint, and that if he wanted to do a first class job he would not use such a paint.

We think there was error in directing a verdict on this testimony. Defendant's right to have a jury pass upon the case is not to be controlled by the law governing rescission of contracts, which right of rescission exists in three cases: 1. Where the right to return the property is a part of the original contract. 2. Where there is fraud. 3. Where there has been an entire failure of consideration, as declared in *Kauffman* v. *Stucky,* 37 S. C., 7, 16 S. E., 192.

The question depends rather upon the law of warranty and the bearing of the testimony in that view. The second defense in the answer was as follows:

1. "On or about the 24th day of February, A. D. 1906, the plaintiff sold to the defendant certain paints and goods, being the goods mentioned in the complaint, representing and warranting the same to be pure and of the first and best quality; that the same were and should be free from any adulteration and suitable for all purposes of painting, and that defendant then agreed to purchase said paints and goods, trusting in the representations and warranty of the plaintiff, all of which the plaintiff well knew.

2. "That said paints and goods were not pure, but were adulterated and altogether unsuitable and useless for the purpose for which they were purchased."

There was testimony tending to establish this defense, at least in part, for even if it be conceded that the testimony fails to show that the paints were worthless it cannot be said that the testimony fails absolutely to show that the goods delivered were not of the weight and quality represented as an inducement of the purchase. The jury should have been permitted to pass upon the question whether plaintiff warranted the goods to be of a certain weight and quality and whether and to what extent, if any, the goods delivered failed to come up to the representation.

If there had been no testimony of an express warranty the law would have implied a condition that the articles

were merchantable and reasonably fit for the purchase for which they were intended. *Wells* v. *Spear*, 1 McCord, 421; *Hughes* v. *Banks*, 1 McCord, 540; *Wood* v. *Ashe*, 3 Strob., 70; *Trimmier* v. *Thomson*, 10 S. C., 186; *Robson* v. *Miller*, 12 S. C., 586, 15 Ency. Law, 2 ed., 1231, and cases cited in the notes.

But the defendant relied upon an express oral warranty. Testimony as to this at first rejected was finally admitted; and therefore it was proper for the jury to consider it. The written order signed by defendant alone was silent on the subject of warranty.

The words "terms and conditions" at the foot of the order do not so certainly include "warranties" as to exclude parol testimony on the subject. The rule in this State is where the writing does not contain all the terms of the transaction between the parties, parol evidence which does not contradict or vary the writing may be admissible to show a contemporaneous independent and collateral agreement. *Chemical Co.* v. *Moore*, 61 S. C., 166, 39 S. E., 346; *Ashe* v. *Ry. Co.*, 65 S. C., 138, 43 S. E., 393; *Earle* v. *Owings*, 72 S. C., 362, 51 S. E., 980.

Opinion of Mr. Justice Woods in *Poster Co.* v. *Lick Springs Co.*, 81 S. C., 122, 61 S. E., 1098, in which case two members of the Court concurred only in the result of the opinion by Chief Justice Pope. This case is not like *Coats & Sons* v. *Earley*, 46 S. C., 227, 24 S. E., 305, and *Lumber Co.* v. *Evans*, 69 S. C., 93, 48 S. E., 108, where the excluded testimony was contradictory of the writing.

Misrepresentation of the plaintiff in relation to the consideration of the contract whether made in fraud or mistake is available as a defense. *Means* v. *Brickell*, 2 Hill, 313.

The case of *Burwell* v. *Chapman*, 59 S. C., 588, recognizes the principle stated in this language: "Whether the terms of that paper (the order) constitute a contract or a mere order for the goods therein mentioned, as contended

32—85

for by appellants, is not in our judgment, a material inquiry in this case, for even if it be conceived that such paper was not in itself sufficient to constitute a contract, but was a mere order, we do not think it can be doubted that after if was shown, as the undisputed testimony does show, that the goods ordered in said paper were shipped to the defendants by the plaintiff at Chappells, S. C., the point designated in the paper, the contract was complete and the defendants were bound to pay the price designated in the paper unless the goods did not come up to representations made of them, etc."

The fact that defendant took the goods from the depot and placed them in its warehouse does not conclusively show acceptance of the goods as in compliance with the contract. The purchaser has a reasonable time in which to examine goods before acceptance, and where the nature of the shipment is such that an examination could not be satisfactorily made before taking possession, the purchaser should be allowed a reasonable time thereafter in which to accept. *Ancrum* v. *Wehman,* 15 S. C., 123.

There was some testimony that defendant declined to accept the goods within three days after their arrival at Clio, and the day after they were taken from the depot. It was for the jury to say whether defendant had accepted the goods as in compliance with the contract of sale.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.