## 11878

### YANCEY *ET AL.* v. SOUTHERN WHOLESALE LUMBER CO.

#### (131 S. E., 32)

1. TROVER AND CONVERSION—TAKING POSSESSION OF PROPERTY UNDER ORDER OF CLERK OF COURT, ENTERED BY CONSENT OF PARTIES, HELD NOT CONVERSION.—Where seller had levied upon property under attachment, and Clerk of Court issuing attachment had signed order on consent of parties directing delivery of property to seller, after executing surety bond, *held* taking possession of property by seller was not conversion.

2. JUDGMENT—ISSUE FROM WHICH APPEAL WAS NOT TAKEN IS RES ADJUDICATA.—Where appeal was not taken from verdict for defendant on plaintiff's cause of action, that issue is *res adjudicata.*

3. SALES—REMEDIES OF BUYER WHO DISCOVERS MISREPRESENTATION AFTER PAYMENT OF PRICE.—Buyer may, upon discovery of misrepresentation, return or offer to return property and demand rescission of contract and return of purchase price, or may retain property and demand damages for breach of contract.

4. SALES—ANSWER SETTING UP COUNTERCLAIM FOR DAMAGES HELD TO
BE FOR BREACH OF WARRANTY AND NOT FOR RESCISSION OF CON-
TRACT.—Where answer to action upon notes gives for machinery
set up counterclaim for damages on account of breach of warranty
and alleged fraud, counter action is for breach of warranty and
not for rescission of contract.

5. SALES—PURCHASER WAIVED RIGHT TO INVOKE REMEDY OF RESCIS-
SION AFTER OBTAINING DIRECTION OF VERDICT ON THEORY THAT
SELLER CONVERTED PROPERTY.—Purchaser, who obtained direction of
verdict on seller's cause of action, on ground that seller, by taking
possession of property and selling it, had converted property to his
own use and satisfied debt, waived right to invoke remedy of re-
scission of contract.

6. JUDGMENT—IT IS PERSUASIVE, IF NOT RES ADJUDICATA, THAT THERE
WAS NO RESCISSION OF SALE WHERE NO APPEAL WAS TAKEN FROM
RULING FOUNDED THEREON.—That no appeal was taken from re-
fusal of motion for new trial, on ground that acts of seller in tak-
ing property were not only conversion but rescission of sale, is
persuasive, if not *res adjudicata,* that there was no rescission.

7. SALES—LETTERS HELD TO SHOW WAIVER OF RIGHT TO TENDER RE-
TURN AND RESCIND CONTRACT.—Letters of purchaser, demanding
return of money paid for property unless seller made good guar-
anty, *held* abandonment and waiver of right to tender return of
machinery and to rescission of contract.

8. EVIDENCE—ORAL EVIDENCE OF REPRESENTATIONS IS ADMISSIBLE,
WHERE CONTRACT OF SALE HAS NO EXPRESSED WARRANTY.—Where
contract of sale contains no expressed warranty, oral evidence of
representations constituting warranty is admissible.

9. SALES—BUYER ELECTING RESCISSION IS LIMITED TO RECOVERY OF
AMOUNT PAID.—Where buyer elects to invoke right of rescission
he is limited to recovery of price or part thereof which he has
paid, and is not entitled to damages resulting from breach of con-
tract, unless loss sustained was due to refusal of seller to accept
tender of property.

10. SALES—VENDEE, ON BREACH OF WARRANTY, HAS OPTION TO RETAIN
PURCHASED ARTICLE AND RECOVER DAMAGES SUSTAINED OR RESTORE
IT IN REASONABLE TIME AND RECOVER PRICE PAID.—Vendee, on
breach of warranty, has option to retain purchased article and re-
cover damages sustained, or restore it in reasonable time and re-
cover price paid.

11. SALES—BUYER HAS DUTY TO TAKE CARE OF PROPERTY WHICH SELLER
HAS REFUSED TO RECEIVE AND CHARGE SELLER WITH EXPENSES, IF
CLAIM OF RESCISSION IS ESTABLISHED.—Buyer, upon refusal of tender
back of property, has no right to abandon it, and it is his duty
to take care of it and bill the seller, in event his claim of rescis-
sion is established with expense attached thereto.

Before FEATHERSTONE, J., Richland, March, 1925.   Affirmed.

Action by B. E. Yancey and G. H. Yancey and another against the Southern Wholesale Lumber Company.   From a judgment for defendant on its counterclaim, both parties appeal.

*Mr. Jos. L. Nettles,* for plaintiffs, cites:   *Action is for breach of contract:*   109 S. E., 106.   *Theory of case to be drawn from pleadings:*   88 S. C., 143.   *Conversion:*   103 S. E., 766; 1 Rich. L., 322.   *Election of one theory binding:*   112 S. C., 422; 88 S. C., 142; 2 Spears 409.   *Prior agreements merged in final contract:*   102 S. C., 139.

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for defendant, cite:   *Former appeal:*   129 S. C., 50; 123 S. E., 767.   *Property valueless for purpose bought; rescission of contract:*   128 S. C., 153; 172 S. E., 578; 85 S. C., 492; 80 S. C., 296; 37 S. C., 15; 16 S. E., 192; 5 Page on Contracts, Sec. 2992; 2 Williston on Sales, 2nd Edition, Sections 603 and 608; Uniform Sales Act, Sec. 69 (1) (d) (4) (5).   *Parol evidence rule:*   141 U. S., 517; 35 L. Ed., 840.   *Exception to parol evidence rule; contract silent:*   127 S. C., 232; 120 S. E., 834; 124 S. C., 286; 117 S. E., 539; 81 S. C., 122; 61 S. E., 1098; 144 U. S., 517; 35 L. Ed., 840.   *Exception to parol evidence rule; collateral agreements:*   85 S. E., 493; 72 S. C., 364; 51 S. E., 980; 65 S. C., 138; 43 S. E., 393; 61 S. C., 166; 39 S. E., 346; 217 F., 555; 133 C. C. A., 410; 1 Williston on Sales, 2nd Ed., Sec. 215.   *Parol evidence to show lack of consideration:*   129 S. E., 130.   *Parol evidence to show surrounding circumstances:*   124 S. C., 286; 117 S. E., 539; 108 S. C., 114; 93 S. E., 328; 98 S. C., 20; 81 S. E., 1027. *Parol evidence to show object of contract:*   124 S. C., 286; 117 S. E., 539; 27 S. C., 324; 98 U. S., 514; 1 Elliott on Evidence, Sec. 584.   *Oral contract as consideration for written contract admissible:*   4 Page on Contracts, Sec.

2165. *Express warranty defined:* Uniform Sales Act, Sec. 12. *Implied warranty:* 91 S. E., 756; 85 S. C., 492; 80 S. C., 296; Uniform Sales Act, Sec. 15 (1) and (6). *Order not appealed from is res adjudicata:* 129 S. C., 51; 123 S. E., 767; 125 S. C., 67; 118 S. E., 26.

December 8, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This action was instituted in January, 1921, upon several promissory notes given by the defendant in February, 1920, for certain machinery which had been sold by the plaintiffs to the defendant, under a contract dated January 31, 1920. At the time of the commencement of the action the plaintiffs procured an attachment and had it levied upon the machinery. The "statement" in the "case" recites:

"The answer admitted execution of the notes, denied certain allegations of the complaint as to the amount due, *set up a counterclaim for damages on account of breach of warranty,* and alleged fraud in the representations as to the quality of the machinery."

It appears that, after the machinery had been levied upon under the attachment issued in January, 1921, it was left standing exposed to the weather, just off a public highway, about 8 miles from the Town of Edgefield, "until August, 1922." "Case." The attorneys for the respective parties then had the Clerk of Court of Richland County, who issued the attachment, to sign an order, "not dated in the record for appeal," by consent, directing the Sheriff to deliver the machinery to the plaintiffs upon their executing "a surety bond to answer any judgment obtained by the defendant upon its counterclaim." Accordingly, on August 23, 1922, the plaintiffs executed the bond required, took charge of the machinery, had it shipped to Atlanta, sold a part of it at private sale for $5,500, and retained a part of it, stored in a warehouse.

The bond recites that "counsel for the parties hereto have agreed that it is for the best of all parties concerned that the machinery be sold," without stating how or by whom.

The case was first called for trial before Hon. J. W. De-Vore and a jury. After the plaintiffs had closed their case and the defendant had offered evidence in support of its counterclaim, and the plaintiffs had replied, the defendant made a motion for a directed verdict in its favor, upon the grounds that the plaintiffs had voluntarily taken into their exclusive possession and control the machinery; had removed it from the State and from the jurisdiction of the Court; had sold a large part of it at private sale without notice to the defendant, and retained the proceeds of sale without accounting to the defendant therefor; and had not tendered the remaining machinery to the defendant or rendered any accounting of its value. The Circuit Judge granted the motion upon the grounds stated by him as follows:

"My judgment also is that, when they removed that property from this State, took it out of the jurisdiction of the Courts of this State and sold it at private sale, without giving any notice whatsoever to the defendants of the sale, they were guilty of a conversion, and, whether that property, if that was a conversion, and that is my judgment that it was, whether that property brought enough to pay the claim of the plaintiffs or not, they cannot in this case get a judgment for any balance that may be due, even if it did not bring enough to pay the plaintiffs' claim. If it had brought more than enough to pay the claim of the plaintiffs, it was the plaintiffs' duty to account for it and turn it over to these defendants."

The case was then submitted to the jury upon the defendant's counterclaim, the Circuit Judge holding, over the protest of the defendant, that the plaintiffs were entitled to the opening and reply in the argument. The jury rendered a verdict in favor of the plaintiffs upon the defendant's

counterclaim. Upon appeal by the defendant, this Court held (129 S. C., 48; 123 S. E., 767) that, the plaintiffs' cause of action having been eliminated by the direction of a verdict in favor of the defendant, there was nothing to be tried except the defendant's counterclaim, as to which the defendant was the actor and entitled to the opening and reply. A new trial was accordingly ordered, limited to the defendant's counterclaim. The second trial came on before his Honor, Circuit Judge Featherstone, at March term, 1925, and resulted in a verdict of $1,000 in favor of the defendant. From this judgment both parties have appealed.

We think that the Circuit Judge (Judge DeVore) was entirely wrong in his disposition of the case upon the first trial, so far as the plaintiffs' cause of action was concerned. He held that the conduct of the plaintiffs in reference to the machinery amounted to a conversion of it, and that the effect of that conversion was practically an extinguishment of the notes held by the plaintiffs against the defendant; "that that settled the debt." The undisputed evidence, documentary, shows that, by the written consent of the defendant, the Clerk of Court signed an order "for the best interest of all parties concerned," that the machinery which had been lying out exposed to the weather from January, 1921, to August, 1922, be delivered to the plaintiffs to be sold, manifestly imposing a trust upon the plaintiffs to exercise due care in disposing of the property and in accounting to the defendant for its proceeds. How that can be construed into a conversion of the defendant's property, an actionable tort, is beyond our comprehension. In the case of *Nelson v. Whetmore,* 1 Rich., 318, a conversion is defined thus:

"Any act in exclusion or defiance of the plaintiff's right, any assumption of property and of the right of disposition, any intermeddling indicating a claim of ownership, any assertion of the control which belongs to the owner, whether

for the benefit of the defendant or of a third person, may
furnish proof of the conversion."

Whatever was done with the property by the plaintiffs
was done with the express written consent of the defendant
and for its benefit, as well as for the plaintiffs, except that
the details of the disposition of it were not specifically
agreed upon.   After the defendant had agreed that the
plaintiffs take charge of the property and sell it, did they
expect the plaintiffs to sell it where it had stood for 19
months, 8 miles in the country?   Or in its then condition?
Manifestly it was intended that the plaintiffs should take
charge of it, put it in proper condition, and sell it.   Was
there a better way to perform this duty than to ship it to
their place of business in Atlanta and repair it?   On August
31, 1920, before the property was delivered to the plaintiffs,
they wrote to the defendant:

"Of course, we are glad to help you out of any difficulty
we can, and, if you care to ship your outfit to Atlanta, we
will have same overhauled, or rather cleaned up, and give a
list of the material to all of our men and instruct them to
sell it for you.   We will be glad to do this for you, if you
care to do so, and, just as soon as the sale is made, we will
either have the parties deal direct with you, or we will make
the sale for you and send you balance due."

This letter does not appear to have been answered by the
defendant; but on October 1, 1920, the defendant wrote,
demanding that the plaintiffs take the machinery and return
all cash paid and unpaid notes.   On October 5, 1920, the
plaintiffs wrote the defendant:

"If you see fit and do not care to have the outfit you can
send this in to us and we will have your tractor and trailers
cleaned up and place them on the market, giving you entire
proceeds from this sale, *after our claim is satisfied, and if
you wish it held for any stipulated price, we will be glad to
do this also.*"

The defendant answered this letter on October 8, threatening, notwithstanding the consent order permitting delivery to the plaintiffs and sale by them, that, if the demand to return cash and notes should not be complied with, the defendant would sell the machinery where it stood at public outcry for the purpose of reimbursement.

Manifestly, therefore, there was no conversion by the plaintiffs of the machinery. If the defendant was not satisfied with the conduct of the plaintiffs in handling and selling the machinery, the way was open by supplemental answer to call them to account. Even if the plaintiffs had taken possession of the tractor without the consent of the defendant and sold it at private sale, that at the most would have satisfied only the separate note for the tractor secured by a mortgage upon it, under the doctrine declared in *Fowler v. Goldsmith,* 131 S. C., 119; 126 S. E., 431; the other note for the trailers was not secured.

From the action of Judge DeVore in directing a verdict in favor of the defendant upon the plaintiffs' cause of action, however, the plaintiffs did not appeal, and, as held upon the former appeal, that issue is *res adjudicata;* and, while that matter cannot be inquired into in this appeal, the result and the basis of the decision are relevant upon the vital question in this appeal, and that is, should the defendant have been allowed to recover damages based upon the alleged rescission of the contract of sale? As we understand the contention of the defendant now, it is that the defendant should have been allowed to recover, as upon a rescission of the contract of sale, the amount which it paid upon the contract price, $4,000, and the damages sustained in consequence of the acts of the plaintiffs upon which a rescission is based.

If all that the defendants have alleged and endeavored to prove with reference to the quality and adaptability of the machinery had been true, the defendant would have had either of two remedies, as expressed in the

case of *Ebner v. Haverty Co.,* 128 S. C., 151; 122 S. E., 578:

"(1) He [the buyer] may, upon discovery of the misrepresentation, within a reasonable time which the law allows for an inspection, return or offer to return the property, and demand a rescission of the contract and a return of the purchase price paid by him; or (2) he may retain the property, and demand damages for a breach of the contract."

He cannot do both, for the remedies are inconsistent as pointed out in that case.

The first inquiry is as to the nature of the defendant's cause of action as set forth in its counterclaim. The "case" states:

"The answer  *  *  *  set up a counterclaim for damages on account of breach of warranty."

Counsel for the defendant state in their printed argument:

"The defendant, in its answer, had set up a counterclaim growing out of the alleged breach of warranty in connection with the sale of the machinery and for fraudulent representations in the sale."

The answer makes no mention of a demand for a rescission of the contract or for a return of the payments made upon the contract of purchase, but alleges that "the defendant had been damaged by the breach of the contract  *  *  *  and by the failure of the said plaintiffs to carry out their agreement, representations, and warranties in the sum of $10,000." This Court, upon the former appeal, constituted the answer as follows:

"The answer  *  *  *  set up a counterclaim for damages on account of breach of warranty, and alleged fraud in the representations as to the quality of the machinery."

We think that it is too late now for the defendant to contend that the defendant in its counterclaim has invoked the remedy of rescission, and that the Circuit Judge was right in ruling:

"The action here is for a breach of warranty and not for a rescission of the contract."

Even if defendant's cause of action might originally have been construed as invoking the remedy of rescission, the defendant has waived the right to insist upon that construction by moving for, and obtaining the direction of, a verdict in its favor upon the plaintiffs' cause of action, upon the ground that the plaintiffs, by taking possession of the machinery and selling it, had converted the property to their own use and satisfied the debt. This result could only have been secured upon the theory that the property *belonged to the defendant;* which is inconsistent with the theory of rescission; that necessarily is based upon the theory that the title to the property has never passed from the plaintiffs or has been revested in them upon a rescission of the contract. Nor can the defendant rightly claim that the conduct of the plaintiffs in handling the machinery as aforesaid amounted to a rescission of the contract, for the reason that the defendant has gotten the benefit of a discharge from the notes upon the ground of conversion.

In addition to this, after the first trial had resulted in a verdict in favor of the plaintiffs upon the defendant's counterclaim, the defendant moved for a new trial upon the following ground among others:

"That the acts of the plaintiffs in taking the machinery, for part of the purchase price of which this suit was brought, and removing the same from the State, in selling a part of it and offering the balance for sale without notice to or knowledge of the defendant, was not only a conversion of the property, but a rescission of the sale, and the defendant was entitled to recover at least the purchase price in its counterclaim, especially as the plaintiff did not set up against such recovery any claim authorizing a deduction therefrom;"

—which motion was refused. No appeal upon this ruling

was prosecuted. It is persuasive, if not *res adjudicata.* *Kibler v. R. Co.,* 64 S. C., 242; 41 S. E., 977.

It is very questionable whether the defendant ever made a definite tender of a return of the machinery, or, if so, whether it has not waived all claim for a rescission of the contract. The first intimation of a tender is in the defendant's letter of July 23, 1920:

"In order however that there be no misunderstanding, we are now sending you this written notice and desire to say that this machinery must be put by you in satisfactory working condition and exhibit to our satisfaction that it will come up to your guaranty at some early day. In default of this we further advise you that we will insist upon your taking the machinery off our hands and reimburse us the money thus far paid on account of purchase and also the expense to which we have been put endeavoring to put same in working condition."

This is very far from the definite tender of a return of the property required by the law, coming, as it did, two months after the machinery had been delivered and tested. On August 21, 1920, the defendant wrote:

"We certainly must insist upon your refunding our money and taking this machinery off our hands."

This was three months after delivering and test. On October 1, 1920, the defendant wrote:

"The purpose of this letter now is to demand of you that you relieve us of this machinery, return to us all cash paid you, and return to us all notes for the balance of the purchase money."

This was seven months after the delivery and test. On October 8, 1920, the defendant returned to its original proposition and demanded that the machinery be put in order:

"This letter is to advise you that, unless you will make good your guaranty *during the current month,* and demonstrate to our satisfaction that the machinery will do the

work you guarantee, that you return to us the money and notes as above demanded. And in default of that we now give you notice that we will then offer this machinery for sale at public outcry and dispose of same for the purpose of reimbursing ourselves of the money we have paid you."

This was a clear abandonment and waiver of the defendant's right to tender a return of the machinery, and to a rescission of the contract, and an infraction of the consent order permitting the plaintiffs to take the machinery and sell it.

In *Eagle Co. v. Delta Co.,* 157 La., 832; 103 So., 182, it was held that, where the buyer, on default of notes for purchase price of personal property, voluntarily surrendered it to the seller to prevent deterioration, he did only what he might have been compelled to do, and that no cause of action for annulment of the sale resulted from such taking by the seller.

We think, therefore, that the defendant, by the statement in the "case," by the pleadings, by the argument of counsel, by estoppel in procuring the direction of a verdict in favor of the defendant upon the plaintiffs' cause of action, and by waiver in the conduct of the defendant, has conclusively bound itself to the theory that its counterclaim is based upon an alleged breach of warranty in the sale of the machinery.

All of the defendant's exceptions are based upon the theory that there was a rescission of the contract, and that it was entitled to a return of the purchase price paid by it. As that position has not been sustained, and as the counterclaim is held to have been based upon an alleged breach of the warranty, and as we perceive no error on the part of the Circuit Judge in his declaration of the law applicable to such a cause of action, even if there had been exceptions questioning his charge in this respect, it follows that the judgment must be affirmed, unless, upon a consideration of the plaintiffs' exceptions, some error may be found affecting its correctness.

The plaintiffs contend that there was error in admitting evidence of oral and written negotiations between the parties prior to the execution by them of the written contract for the sale and purchase of the machinery, tending to establish certain specific warranties, upon the ground that the written contract is conclusively presumed to have embodied the entire contract between the parties. The prior written evidence consisted of a pencil memorandum, made by an agent of the plaintiffs during the negotiation for the sale of the machinery, and claimed by the defendant to have induced the consummation of the written contract, and of a letter of the plaintiffs which had a similar effect. The representations claimed by the defendant to have been made thereby were to the following effect: That the tractor with the trailers would haul 20,000 feet of lumber per day upon an 8-mile haul to the defendant's mill at a cost of $17.50, approximately 90 cents per M feet, making two trips per day over the roads in Edgefield County; that the tractor would require only 25 gallons of gasoline and 5 quarts of oil for a 10-hour per day run; that it would haul from 27½ to 32½ tons at a speed of from 3 to 3½ miles an hour, empty at from 5 to 5½. The oral evidence tended to show that these representations were untrue; that they were relied upon by the defendant; that they induced the execution of the contract; that the machinery was not adapted to the uses of the defendant; and that the defendant suffered damage in consequence.

The authorities cited by counsel for the defendant appear to settle the question in this State, contrary to the impressions of the writer of this opinion that, where the contract of sale contains no express warranty, oral evidence of representations constituting a warranty is admissible. *Eureka Paint Co. v. Bennett Hedgepeth Co.,* 85 S. C., 486; 67 S. E., 738. *Maxwell v. Furniture Co.,* 127 S. C., 225; 120 S. E., 834, and cause cited; Williston Sales (2d Ed.) § 215; *Harris v. Marsh,* 217

F., 555; 133 C. C. A., 407. My impression was and is that, where there is no express warranty in a contract of sale, the law implies a warranty; and, if so, parol evidence of an express warranty is necessarily in conflict with that implied. *Oxweld v. Davis,* 115 S. C., 426; 106 S. E., 157. *Colt v. Hallman,* 118 S. C., 404, syllabus 2; 110 S. E., 462. I yield, however, for the time being, to the above authorities.

The following suggestions are declared *obiter dicta,* and are made with the hope that they may be of use at some other time:

The question whether a breach of warranty may supply the basis of rescission of a contract of sale has been one of considerable controversy.

"The English law clearly denied the right of rescission of an executed sale for breach of warranty. A diminishing number in the United States also deny it. But the majority allow it." Williston on Sales, § 608 (a), citing cases from many States.

The case of *Ebner v. Haverty,* 128 S. C., 151; 122 S. E., 578, apparently follows the anti-English rule, although it must be conceded that it is not entirely in accord with the case of *Kauffman v. Stuckey,* 37 S. C., 7; 16 S. E., 192, and *Id.* in 40 S. C., 110; 18 S. E., 218. *Where the buyer* elects to invoke the right of rescission, he is limited to a recovery of the price or part thereof which he has paid; he is not entitled to damages resulting from a breach of the contract except where the loss sustained is due to the refusal of the seller to accept his tender of the property back, 35 Cyc., 606; Williston on Sales, § 612; *Seibles v. Blackwell,* 1 McMul., 56.

"The true rule, it seems to us, is to give the vendee his option to retain the purchased article and recover the damages sustained, or to restore it within a reasonable time, and recover the price paid." *Rogers v. Hanson,* 35 Iowa, 283, cited in note 27 L. R. A. (N. S.), 922.

If the buyer wishes to recover damages beyond the price paid, the way is open to him to sue for a breach of the contract or for breach of the warranty. The general rule, as declared in the *Ebner Case,* is that the buyer is not entitled to a rescission of the contract unless he returns or offers to return the property in substantially its original form and condition. This is subject to the qualification that, as the buyer has the right to a reasonable investigation and test of the property, the change in the property, the result of the exercise of this right, is not to be held against him; nor where the alteration is the result of the defects of which he complains.

The buyer, upon a refusal of his tender back of the property, has no right to abandon it. It is his duty to take care of it and bill the seller, in the event his claim of rescission is established, with the expense attached thereto. *Seibles v. Blackwell,* 1 McMul., 56. *Carter v. Walker,* 2 Rich., 40. If he should abandon the property his claim for a return of the price paid should be reduced to the extent of the damage to the property sustained by his neglect.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.