## OBER v. BLALOCK.

1. CORPORATE CAPACITY—ISSUE—RIGHT TO SUE.—Where the complaint alleged that the plaintiff was a corporation of Maryland, and competent to sue in the courts of this State, a general denial does not put in issue plaintiff's capacity to sue, and its right to make a contract in this State, which is thereby put in issue, follows from plaintiff's corporate existence.

2. WRITTEN CONTRACTS—CHARGE ON FACTS.—It is the duty of the judge to construe a written contract, and his remarks on facts in issue made to counsel in the hearing of the jury while so construing it, are not in violation of the constitutional inhibition as to charging on facts; especially so, where the charge afterwards made to the jury properly submitted all these questions for their determination.

3. EVIDENCE.—Under the statute which makes the board of trustees of Clemson College the keeper of all records of the Department of Agriculture, an

analysis of a fertilizer made by the chemist of that department, and properly on file, may be introduced in evidence after identification by the president of such board of trustees.

4. SALES—WARRANTY.—Under a contract to sell a certain brand of fertilizers at a sound price, the seller expressly warrants the article sold to contain the ingredients of that particular brand, but no warranty can be implied that the article will produce good results.

5. CASES CRITICISED.—This case distinguished from cases in which the express warranty mentions the title only, or warrants results from the use of the article sold.

Before NORTON, J., Laurens, February, 1893.

This was an action by G. Ober & Sons Company against James S. Blalock, to recover on the contract set out in the opinion. At the hearing, an oral demurrer was interposed, alleging that the facts stated in the complaint did not show any right of plaintiff to make the contract in this State. This demurrer was overruled. The appeal was on the following exceptions:

I. Because the presiding judge erred in refusing to sustain the oral demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, complaint showing on its face that the action was brought in the name of a foreign corporation, that the contract was made in this State by said corporation, and yet failing to show that under its charter it had the right to make such a contract, and had the right to sue in the courts of this State.

III. Because the presiding judge erred in stating in open court during the progress of this trial that the plaintiff had proved that the guano furnished to the defendant did contain the ingredients that it professed that it contained, when, it is submitted, that was the question of fact in the case, and one which he should have left the jury to decide.

IV. Because he erred in stating during the progress of the trial that the plaintiff company agreed to furnish to the defendant certain fertilizer of known ingredients, and did not agree to guarantee any results, there being no evidence to support such a conclusion.

V. Because he erred in stating during the progress of the trial: "It seems to me that the State chemist being appointed

for the further protection of the farmer, and having examined the fertilizer, it is presumed to be correct, and that presumption must be overcome."

VI. Because he erred in stating that the tags showed that the State chemist had examined the guano, and that it was all right.

VII. Because he erred in allowing R. W. Simpson, a witness for the plaintiff, to testify as to the analysis made by the State chemist.

X. Because he erred in charging the jury: "I charge you that if you find that the guano purchased by Mr. Blalock did contain the ingredients which he alleges that it contained, at least so much of the valuable ingredients as he alleges that it contained, then you ought to find a verdict for the plaintiff."

XI. Because he erred in charging the jury: "If you think that the fertilizer did not wholly fail, but failed in part to combine the constituent elements—that is, that they were not in such proportions as to be of full value—if it had been partly compounded according to the formula, but were yet of some value to Mr. Blalock, then you ought to find so much as you think they were of value to him."

XII. Because he erred in refusing to charge defendant's first, second, and third requests to charge.

XIII. Because he erred in charging the jury that if the guano used by defendant came up to the analysis, and if it contained the ingredients it was warranted to contain, the said defendant would be bound to pay for it, even though it proved to be of no value to him whatever.

XIV. Because he erred in charging the jury, "I suppose that your common sense would teach you that to make the seller of fertilizers responsible for the benefit to be derived by the purchaser from it, it must have been used under circumstances which would produce a proper result. If there was a season without rain, for instance, entirely, of course, no amount of fertilization would make the cotton sprout in the hill and grow, or if as soon as the cotton was up there should be no more rain, of course, the plant would wither away and die," it being respectfully submitted that such language was in the

3—40

nature of an argument to the jury, and testimony in behalf of the plaintiff.

XV. Because he erred in charging plaintiff's first, second, and third requests to charge.

XVI. Because he erred in refusing to grant the motion for a new trial *nisi*, on the ground that the jury improperly gave the plaintiff interest on its claim.

XVII. Because the presiding judge erred in charging, after reading the contract set out in the complaint: "That I construe to be a contract for the delivery of a certain article—that is, Farmers' Standard Phosphate—manufactured by or under the formula of G. Ober & Sons Company. It is not stated in the contract what the ingredients should be, it is not stated what the results should be, but we have evidence outside of that what the formula, or what per cent. of the different valuable substances in this fertilizer should be, and we have no statement of any guaranteed results."

XVIII. Because he erred in charging the jury that as a matter of law there was no implied warranty of good results on the part of plaintiff as to the guano.

*Furguson & Featherstone*, for appellant.

*Simpson & Barksdale*, contra.

November 13, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The plaintiff respondent, according to the allegations of the complaint, is "a body corporate and politic by and under the laws of. the State of Maryland, and is competent to sue in the courts of the State of South Carolina." The corporation was the manufacturer of a certain brand of fertilizer, known as "Farmers' Standard Phosphate;" and on January 13, 1890, sold to James S. Blalock ten tons of said fertilizer at $25 per ton, delivered at Goldsville, S. C. The contract is set out in full in the complaint, and is in the form of a proposition in writing, accepted by the defendant, as follows:

"Baltimore, January 13, 1890. Dear Sir: We will ship you ten tons of our Farmers' Standard Phosphate, or as much

more as may be mutually satisfactory, at twenty-five dollars per ton of two thousand (2,000) pounds, in bags on board of cars or boat at Goldsville, S. C., to be settled for by your note or notes, to average due November 1, 1890, and payable at our office, Baltimore, Md.,'' &c. This offer was accepted in writing. The article was furnished according to the contract, but Blalock declined to give his note, and refused to pay for the fertilizer. The plaintiff brought his action on the contract, and the defendant interposed the defence, that the fertilizer proved to be worthless—produced no good "results"—and set up a counter claim for damages sustained by reason of the alleged worthlessness of the guano.

The issues were tried before Judge Norton and a jury. Under the charge of the judge, the jury found for the plaintiff the amount sued for, and interest from the time the note was to have been given. The defendant moved for a new trial on the grounds stated in the Brief, but the motion was refused, and the case comes to this court upon various exceptions. Both parties made requests to charge, some of which were charged, and others refused in whole or in part. They are all in the record, and we will only consider such of them as are objected to, in connection with the exceptions. The exceptions are long and numerous (eighteen in number); and we will endeavor to condense them, by following the classification adopted in the argument of appellant's counsel.

Exception 1, relating to the refusal of the judge to sustain the oral demurrer, and 12, complaining of error, in refusing to charge defendant's first and second requests, will be considered together. The first of these requests was "that the plaintiff must show that, under its charter, it has the right to make such a contract as is sued on here, and if it fails to show that by the evidence, the jury should find for the defendant." The second request was "that the plaintiff must show by the evidence that it has the right under its charter to sue in the courts of South Carolina, and if it fails to show this, the jury should find for the defendant," &c.

First, then, as to the oral demurrer. The complaint alleged that the plaintiff was a corporation of Maryland, and compe-

tent to sue in the courts of South Carolina. These were mat-
ters which related to the plaintiff's right to sue, but were
really no part of his cause of action; and, therefore, could not
be put in issue by a mere "general denial," but for that pur-
pose a specific denial was necessary. There was no specific
denial here as to the plaintiff being a corporation, with the
right to sue in this State; for the statement, "no knowledge or
information sufficient to form a belief," &c., is only another
form of a general denial. As to these points, then, the defend-
ant made no adequate issue. They were, in effect, admitted
by the pleadings, and, of course, the judge was right in over-
ruling, to that extent, the oral demurrer. See *Steamship Com-
pany* v. *Rodgers*, 21 S. C., 27, and *Palmetto Lumber Company* v.
*Risley*, 25 S. C., 309, and authorities cited.

But it is urged that the complaint did not allege that the
plaintiff corporation had the right to enter into the contract
herein stated in the State of South Carolina, and the general
denial must be considered as sufficient to put in issue the
whole case, including this right; that it was necessary for the
plaintiff to prove it before it could recover. As it seems to
us, the admission of the right to sue would necessarily carry
with it the right to contract. The right insisted on pertains
to the right to sue and not to the plaintiff's cause of action.
Besides, it is well settled now in this State, that a corporation
created by the laws of one State may lawfully do business in
another State, unless forbidden by the charter or by the laws
of such other State. "Nor are we aware of any law or public
policy of this State either expressly or impliedly prohibiting
such a corporation from doing business in this State." *Ex
parte Benson & Co.*, 18 S. C., 43; *Kerchner* v. *Gettys, Ibid.*, 523;
*Bank of Augusta* v. *Earle*, 13 Peters, 519.

Exception 2 was not pressed, and 3, 4, 5, 6, complain that
the judge expressed his opinion on certain facts as follows: (1)
"That the plaintiff had proved that the guano furnished
did contain the ingredients that it professed" to have.
(2) "That the company agreed to furnish to the defend-
ant a certain fertilizer, of known ingredients, and did not
agree to guarantee results." (3) "It seems to me that the

State chemist, being appointed for the further protection of the farmers, and having examined the fertilizer, it is presumed to be correct, and that presumption must be overcome." (4) In stating that the tags showed that the State chemist had examined the guano, and that it was all right, &c. The point is made, that in the particulars above indicated, the judge violated section 26, article IV., of the Constitution, which "prohibits judges from charging juries as to matters of fact." We have read the whole charge carefully, and we think there is some misapprehension as to the precise meaning and extent of the remarks attributed to the judge, taken as they are from the context. But, without going into that, we think it is enough to say, that it was the duty of the judge to construe the written contract of the parties, and that the remarks were not made in charging the jury, but in hearing argument and making rulings as to the admissibility of evidence during the progress of the case. The judge was not expressing an opinion upon any of the points made which, by any possibility, could reach and influence the jury; especially as, in his charge to the jury, he carefully explained all the points referred to. See *State* v. *Atkinson*, 33 S. C., 101, and *State* v. *Turner*, 36 *Id.*, 544.

Exception 7 charges that the judge erred in allowing R. W. Simpson, a witness for the plaintiffs, to testify as to the analysis made by the State chemist. It does not seem to be denied that Mr. Simpson was an incompetent witness, but that he could prove the record of the analysis, which showed the ingredients and by whom made. The witness testified as follows: "Am president of the board of trustees, Clemson College. The board has in its possession and under its control the books and records of the department formerly known as the Department of Agriculture for South Carolina. These books and records show the inspection and analysis of such fertilizers as were inspected in South Carolina during the seasons of 1889 and 1890. They show the inspection and analysis of the 'Farmers' Standard Phosphate,' manufactured by G. Ober & Sons' Company for the season of 1889 and 1890. It was inspected March 1, 1890, at Grier's, S. C., by S. W. Vance, agent of the Department of Agriculture. I have amongst the

books and records above referred to, a record of the inspection and analysis of the 'Farmers' Standard Phosphate' for the season of 1889 and 1890," (giving full copy of analysis by Professor Burney, of the South Carolina College, &c.) By an act of the legislature (December, 1890), the board of trustees of Clemson College was made the custodian and keeper of all the books and records of the former Department of Agriculture. "Attested copies of records, signed by the keeper of such records respectively, shall be deemed and allowed as good evidence, in any of the courts of this State, as the original could or might have been if produced to the said courts." See section 2217 of the General Statutes.

Exceptions 8 and 9, concerning alleged statements of the judge as to what he understood to have been "admitted" by defendant's counsel, were withdrawn.

Exceptions 10, 13, 15, 17, and 18, and so much of 11 as relates to defendant's third request to charge, virtually raise but one question of law, and may be considered together.

4 The judge was requested to charge, that "in this State a sound price warrants a sound commodity, and if the commodity should prove to be of no value, the party buying has a right to refuse to pay for same, and set up the failure of consideration as a defence." The judge charged that the request was true, as a legal proposition; but whether it is applicable to a particular case or not, depends upon the circumstances. "There could be no doubt, if Mr. Blalock, accustomed to the use of fertilizer, was informed that a fertilizer with certain ingredients was offered him, and that plaintiffs guaranteed that it should contain these ingredients and nothing more, no other guarantee being made than that it contained these certain ingredients and nothing more, then Mr. Blalock took his fertilizers at his own risk, and if it proved to be of no value whatever, if it contained the ingredients that it was warranted to contain, manipulated in the way that it had been warranted to be manipulated, he would be bound for it, although the circumstances under which he used it, was [made it] of no value whatever to him. I suppose that your common sense would teach you, that to make the seller of

fertilizers responsible for the benefit to be derived by the purchaser from it, it must have been used under circumstances which would produce a proper result. If there was a season without rain, for instance, entirely, of course, no amount of fertilization would make the cotton sprout on the hill and grow, or if, as soon as the cotton was up, there should be no more rain, of course, the plant would wither away and die. So that all, under any circumstances, a seller of the fertilizer could be held to do, would be that, under suitable circumstances, it would produce a given result; but when he undertakes to guarantee that it contains certain elements, and don't guarantee any thing else, then I charge you that he is not responsible for the results, unless he makes some further representation as to results, as was done by Mr. Robson, in the case that I have just called to your attention against Dr. Miller," &c.

Was this error? The contract was in writing, and it was the duty of the judge to give it construction. It was short and plain—so many tons of "The Farmers' Standard Phosphate" for so many dollars. Calling the article by its commercial name could not create any difficulty. The article was known to be a fertilizer compounded of certain ingredients, and the contract would have been no more clear and explicit, if it had expressly mentioned all the ingredients known to be contained in its composition. The judge charged that the contract was in effect an express warranty that the article contained all the elements known to constitute what was called "The Farmers' Standard Phosphate," compounded by the formula of G. Ober & Sons' Company, and no more; that it was silent as to anticipated results from its use. This was certainly the proper construction of the written contract. If so, the question arises whether, in addition to the express contract, the law will imply another, insuring good results from the application of the article. As we understand, it is only in cases where there is no express warranty, that the law will imply one, or set up what is sometimes erroneously called the equitable condition of the sale. The general rule very clearly is, that where the contract is reduced to writing, parol evidence is inadmissible to show that anything else was intended than what was expressed.

The presumption always is, in the absence of proof, that the parties to any written agreement between them, have, upon the subject matter, expressed their whole agreement. Besides, there would seem to be an inherent difficulty, from the uncertainty incident to the subject, in attempting to measure the fruits of the application of a fertilizer. For the results must always depend largely upon the manner of its application, the character of the soil, the seasons, climate, culture, &c.

It is insisted, however, that the rule is not always applicable, and it does seem that there is an exception in the case, where the express warranty goes only to the title, as in *Wells* v. *Spears*, 1 McCord, 42 ; but this case was restricted by that of *McLaughlin* v. *Horton*, 1 Hill, 383, as applicable "only to a case where the express warranty is silent, for if there is any stipulation in the written contract in relation to the quality of the thing sold, the law will imply nothing." *Hayward* v. *Wallace*, 4 Strob., 181. There certainly was in the contract here "express stipulations" as to the quality of the article ; indeed, a warranty of the ingredients necessary to make the article sold ; and we, therefore, concur with the judge, and think he committed no error. The result might have been different, if the plaintiffs here had warranted results, as was done by the plaintiffs in the case cited by the Circuit Judge of *Robson* v. *Miller*, 12 S. C., 386.

The learned counsel for the defendant cited some cases from our sister State of Georgia, which seem to favor the view so strongly urged by them, particularly the case of *Wilcox, Gibbs & Co.* v. *Owens*, 64 Georgia, 601. But these cases were decided under the Code of that State, which, as we understand it, materially changed the general law upon the subject. It is stated in one of the cases that section 2651 of their Code provides as follows : "The seller, however, in all cases (unless expressly or from the nature of the transaction excepted) *warrants:* (1) that he has a valid title and the right to sell ; (2) that the article sold is marketable and reasonably suited to the use intended," &c.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.