## 11125

### SOUTHERN COAL CO. v. RICE *ET AL.*

#### (115 S. E., 815)

1. SALES—WARRANTY THAT COAL WOULD NOT CLINKER HELD NOT TO INCLUDE GENERAL WARRANTY OF QUALITY OR VALUE FOR BUYER'S USE. —An express warranty that "this coal will not clinker," *held* to exclude an implied general warranty of quality or value for the special use for which required.

2. SALES—SELLER'S FAILURE TO DELIVER GOODS OF KIND PRESCRIBED RELIEVES BUYER OF LIABILITY UNLESS WAIVED.—A seller's failure to deliver goods fulfilling the contract description, unless waived, re-

---

NOTE—On question of implied warranty of quality in sales by description, see notes 14 L. R. A., 492, and 35 L. R. A. (N. S.), 258.

On right of purchaser to reject goods for breach of warranty, see note 27 L. R. A. (N. S.), 914.

On implied condition or warranty of merchantability on sale of goods without particular description or warranty or present opportunity for inspection, see notes 24 L. R. A. (N. S.), 235, and 21 A. L. R., 367.

lieves the buyer of liability for the price, whether the description
constitutes an express warranty or merely a condition precedent to
buyer's obligation.

3. SALES—BUYER WAIVES INFERIORITY OF QUALITY BY ACCEPTING GOODS.
—Where a defect or inferiority constituting breach of a condition
precedent or warranty is discoverable by reasonable inspection before
acceptance, the buyer waives the objection of inferior quality by
acceptance.

4. SALES—ACCEPTANCE OF DELIVERY NOT COMPLETE UNTIL BUYER HAS
HAD REASONABLE OPPORTUNITY FOR INSPECTION.—If no reasonable
inspection of goods sold is possible, or the seller's breach of a condi-
tion precedent or warranty is not discoverable by reasonable in-
spection before delivery, acceptance is not complete until the buyer
has had reasonable opportunity for effective inspection or examina-
tion.

5. SALES—ACCEPTANCE OF GOODS AFTER DISCOVERY OF DEFECT IS EVI-
DENCE OF WAIVER OF OBJECTION, BUT NOT CONCLUSIVE; QUESTION
BEING FOR JURY.—If a buyer, after discovering a defect in goods
delivered, does not promptly notify the seller and offer to rescind
by returning the goods or placing them at the seller's disposal, there
is an acceptance, which is evidence of waiver of any objection that
the goods did not correspond to the description, but not conclusive
thereof; the question being ordinarily for the jury.

6. SALES—WHETHER COAL DELIVERED WAS KIND CONTRACTED FOR HELD
FOR JURY.—In an action for the purchase price of coal, whether
the coal delivered corresponded in character, kind, and quality with
that contracted for *held* for the jury.

7. TRIAL—CREDIBILITY OF WITNESSES AND WEIGHT OF EVIDENCE FOR
JURY.—The credibility of the witnesses and the force and effect
of the evidence are for the jury.

8. SALES—SELLER'S LETTER REFERRING TO TELEGRAMS EMBODYING CON-
TRACT HELD NOT A PART THEREOF.—A letter written by the seller
referring to an exchange of telegrams offering and accepting the
offer of a certain kind of coal at a stated price *held* not a part
of the contract which was embodied in such telegrams, and a
subsequent telegram from the buyer accepting additional cars "as
per last order."

9. EVIDENCE—LETTER WRITTEN BY SELLER AFTER CONSUMMATION OF
SALE BY TELEGRAMS HELD ADMISSIBLE TO CLARIFY DESCRIPTION OF
THING SOLD, AND AS DECLARATION AGAINST INTEREST.—A letter
written by the seller after consummation of a sale by telegrams
*held* admissible to clarify the meaning or sense of the words used
in describing the thing sold, and as a declaration against interest,
though not an integral part of the contract, and inadmissible for the
purpose of adding to, contradicting, or varying the terms thereof.

10. EVIDENCE—TRIAL JUDGE HAS BROAD DISCRETIONARY POWER IN APPRAISING RELEVANCY OF EVIDENCE.—The trial Judge has broad discretionary power in appraising the relevancy of evidence.

Before DeVore, J., Aiken, March, 1922. Reversed and new trial ordered.

Action by Southern Coal Co. against P. J. Rice and E. B. Satcher, partners as Rutherford & Co. Directed verdict for plaintiff, and defendants appeal.

*Messrs. D. G. Fogarty* and *J. B. Salley,* for appellants, cite: *Instruments executed same day, relating to same subject matter, constitute single contract:* 9 Cyc., 580–1; 23 R. C. L., 1329; 6 R. C. L., 850; 24 R. C. L., 154–5; 34 S. C., 309; 48 A. S. R., 353; 148 Mass., 608; 26 A. S. R., 896; 105 S. C., 120. *Article sold must measure up to descriptive name:* 40 S. C., 39; 24 R. C. L., 171; 78 S. C., 204. *"Caveat emptor" does not prevail in S. C.:* 80 S. C., 292; 117 S. C., 150. *Testimony as to whether telegrams were part of contract competent:* 6 R. C. L., 852; 89 S. C., 80; 93 S. C., 541; 125 S. C., 119.

*Messrs. Hendersons,* for respondent, cite: *Contract not enlarged by subsequent letter:* 4 A. S. R., 834; 11 A. S. R., 879. *Declarations of vendor after completed sale are not warranties:* 9 Am. Dec., 602; 24 Neb., 602; 9 Am. Rep., 743; Benj. Sales, 453; 3 Adolph & Ell., 234. *Express warranty excluded implied warranties:* 40 S. C., 31; 30 Enc. L., 135; 134 U. S., 311; 17 Mo. App., 264; 71 Ga., 470; 32 Minn., 371; 46 Io., 193; 35 Mich., 104; 120 U. S., 630; 1 Johns., 414; 6 Johns., 395; 48 N. Y., 365; 2 East, 314; Benj. Sales, 657; 113 S. C., 423. *If known article be furnished it is not warranted to suit purposes of buyer:* 4 M. & W., 399; 5 I. B., 288; 106 S. C., 133. *One chiefly at fault must suffer:* 110 S. C., 110.

February 7, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

At the time of the transactions here involved the defend-
ants were operating a brick-making plant at Hamburg, S. C.
The plaintiff corporation was a jobber in coal, with head-
quarters at Birmingham, Ala.   On June 23, 1920, pursuant
to an offer in writing from the plaintiff, the defendants
ordered for shipment, during the months of July and August,
20 cars of "highclass 10″ Cahaba mine-run coal."   On July
14, 1920, defendants wired the plaintiff:

"Completely out of coal; depending on you; what may
we expect?"

In response to which the plaintiff wired the defendants as
follows:

"Owing to extreme car shortage on M. & O. regret be
unable ship coal as fast as you need it.   Be lucky to get one
car week.   Can ship two to three cars Big Seam mine-run
this week; six fifty mines; rate two fifty.   This coal will
not clinker."

Thereupon, on the same day, the defendants wired:
"Ship three cars as per telegram today."

On the day of this telegraphic correspondence, July 15,
the plaintiff wrote the defendants as follows:

"Referring to our exchange of wires, beg to advise that
the car situation on the Mobile & Ohio R. R. where the
Red Feather mines are located, is so bad, that we will be in
luck to get you one car per week on your order.   We will
give you two to three cars of Big Seam mine-run coal this
week at $6.50 at the mines, freight rate $2.55 to Augusta.
This is a fair grade of Big Seam coal, running about 12,-
500 B. T. U. and 14 to 15% ash, but will not clinker."

On July 22, defendants wired the plaintiff to "ship five
additional cars as per last order."   On the basis of the fore-
going correspondence, the plaintiff delivered and the de-
fendants received six cars of coal.   In action in the Circuit
Court for the recovery of the invoice price thereof the de-
fendants set up the defense of a total failure of considera-
tion, alleging that the coal "was worthless and without

32—S. C.—122

value, unfitted for the uses for which it was sold and in no wise as represented by the sellers to the purchasers." The Circuit Judge directed a verdict for the plaintiff in the full amount claimed. The appeal raises substantially the one question of whether the verdict was properly directed.

The plaintiff's contention, sustained by the presiding Judge in the trial Court, was that this coal was sold by the plaintiff and bought by the defendants upon an express warranty; that such express warranty was that embodied in the plaintiff's telegram of July 15, offering "Big Seam mine-run" at a certain price, with the single representation as to quality that "this coal will not clinker"; that the express warranty excluded any other implied warranty as to quality or value; that it was admitted by the defendants that the coal would not clinker; and that the only reasonable inference that could be drawn from the evidence was that the defendants got what they ordered. The points embraced within appellants' exceptions (1 to 6, inclusive) challenging the correctness of that view may be adequately treated and disposed of under the two general propositions, (1) that the contract did not embody such an express warranty as would exclude an implied warranty as to quality or value, and, (2) that, even if the contract contained such express warranty, there was sufficient evidence of the breach of the conditions of the contract to require the submission of the case to the jury.

As to the first contention, we think the Circuit Judge correctly held, in the light of the surrounding facts and circumstances, that the contract of sale carried such an express warranty as precluded a resort by defendants to the doctrine of implied warranty. The evidence tended to establish that the first coal sold by the plaintiff to the defendants was "Alabama Cahaba 10″ mine-run" which plaintiff expressly stated had proved "very satisfactory to brick plants"; that the failure to furnish the Cahaba coal had been due to no fault of plaintiff, but to railroad troubles;

that it was a time of extreme shortage of coal for industrial purposes; that the offer to ship the "Big Seam mine-run" was in response to an emergency appeal from the defendants; that Mr. Rice, the manager of the defendants' brick plant, was an experienced coal man; and that the descriptive terms used to designate the character of the coal were well known in the coal trade and in industrial circles. In that situation the express assurance that "this coal will not clinker" may fairly be deemed exclusive of any intent to warrant the quality of the coal in other particulars, or to guarantee its suitability for defendants' purposes. The plaintiff seems merely to have offered the best it had in an honest effort to meet the defendants' need, and the defendants to have taken a chance on being able to use the inferior coal they were offered. In view of those conditions, application of the principle that "from an expressed undertaking the law will also imply whatever the parties may reasonably be supposed to have meant, and what is essential to render the transaction fair and honest" (Bishop on Contracts, § 105), does not tend to impeach, but rather to support, the validity of the conclusion that the express stipulation of the seller as to the character and quality of this coal should not be extended by legal implication to include a general warranty of quality or value with particular reference to the special use for which the coal was required. The case is readily distinguishable from that of *Patterson v. Fertilizer Co.,* 117 S. C., 140; 108 S. E., 401, in which the doctrine of implied warranty was applied to a sale by (1) a manufacturer of an article, (2) containing a poisonous and deleterious substance, (3) the subject of which was not covered by express warranty. We are accordingly of the opinion that the rule that "an express warranty will exclude an implied warranty on the same or a closely related subject" is properly applicable to the case at bar, and that the learned Circuit Judge was correct in so holding. *Ober v. Blalock,* 40 S. C., 31; 18 S. E., 264; *Stucky v. Clyburn,* Cheves, 186; 34 Am.

Dec., 590; *McLaughlin v. Horton,* 1 Hill, 383; *Westing-house v. Glenco Mills,* 106 S. C., 133; 90 S. E., 526; *Mull v. Touchberry,* 112 S. C., 423; 100 S. E., 152; *Dewitt v. Berry,* 134 U. S., 306; 10 Sup. Ct., 536; 33 L. Ed., 896.

But we agree with appellants in their second contention that it does not follow from the application of that rule to the evidence adduced that plaintiff was entitled to a directed verdict. The express undertaking of the plaintiff was to sell and deliver to the defendants "Big Seam mine-run" coal. Whether these particular words of description are to be construed as constituting an express warranty or merely a condition precedent to any obligation on the part of the purchaser to accept and pay for the goods delivered is not deemed material to the present inquiry. See elaborate review of authorities in note to *Springfield Shingle Co. v. Edgecomb Milling Co.* (Wash.), 35 L. R. A. (N. S.), 258; 292. If there was a failure on the part of plaintiff to comply with the express stipulation of the contract to sell and deliver to the defendants goods which fulfilled the description of the thing purchased, and if there was no waiver by the defendants of such breach of the contract, then defendants were relieved of any legal obligation to pay the purchase price.

In this connection it may be proper to add that, where the defect or inferiority which constitutes the alleged breach, whether of a condition precedent or of a warranty, is obvious or may be discovered by reasonable inspection or examination before acceptance, the purchaser's remedy is to refuse to accept the goods when delivered. By an acceptance of goods a purchaser waives the right to allege inferiority of quality which is obvious to him. *Brooke v. Milling Co.,* 78 S. C., 200, 205; 58 S. E., 806; 125 Am. St. Rep., 780; *Woods v. Cramer,* 34 S. C., 516; 13 S. E., 660; *Vanderhorst v. McTaggart,* 2 Bay, 498; *Mitchell v. McBee,* 1 McMul., 267; 36 Am. Dec., 264. But, if no reasonable inspection is possible, or if the alleged breach is not dis-

coverable by reasonable inspection before delivery, then acceptance is not to be regarded as complete or absolute until the purchaser has had reasonable opportunity for a practical and effective inspection or examination. Note, 35 L. R. A. (N. S.), 281, 282. In such case, if after discovery of the defect the purchaser does not promptly notify the seller and offer to rescind by returning the goods or placing them at seller's disposal, there is an acceptance which is evidence of waiver of any objection that the goods do not correspond to the description. But such acceptance is not conclusive evidence of waiver (*Greenwood Cotton Mill v. Tolbert,* 105 S. C., 278; 89 S. E., 653, Ann. Cas., 1917C, 338; *Carter & Harden v. Walker,* 2 Rich., 40; *Kauffman v. Stuckey,* 37 S. C., 7; 16 S. E., 192; Id., 40 S. C., 110; 18 S. E., 218; *Ramsey v. Hill,* 92 S. C., 146; 75 S. E., 366; *Campion v. Marston,* 99 Me., 410; 59 Atl., 548), and the question ordinarily is one for the jury under all the facts and circumstances of the particular case.

6, 7    In the case at bar there was evidence tending to establish that the material shipped by plaintiffs was "not coal"; that it was not "mine-run," but "sweepings" or "scrapings"; that Big Seam mine-run is a grade of coal "running about 12,500 B. T. U. (British Thermal Units), and 14 to 15% ash," and that the coal or material delivered to defendants upon analysis ran "B. T. U., 9,-550–10,031 and 26.60 to 27.94% ash"; that Big Seam mine-run is burnable, but that the material delivered to defendants could not be burned; and that promptly after opportunity was afforded to discover the alleged defect the defendants notified plaintiff and placed the goods at its disposal. We think the evidence was susceptible of a reasonable inference that the material delivered to the defendants did not correspond in character, kind, and quality with Big Seam mine-run coal, the article sold by the plaintiff and purchased by defendants. The credibility of the witnesses and the force and effect of the evidence were for the jury.

The conclusion follows that the direction of the verdict for the plaintiff was erroneous. See, generally, *Odom v. Blalock, supra; Walker E., etc., v. Ayer,* 80 S. C., 292, 297; 61 S. E., 557; *Hogins v. Plympton,* 11 Pick. (Mass.), 99; *Barnard v. Kellogg,* 10 Wall., 383; 19 L. Ed., 987; *Lewis v. Rountree,* 78 N. C., 323; *Columbian Iron Works v. Douglas,* 84 Md., 44; 34 Atl., 118; 33 L. R. A., 103; 57 Am. St. Rep., 362; *Procter v. Atlantic Fish Co.,* 208 Mass., 351; 94 N. E., 281; *Gould v. Stein,* 149 Mass., 570; 22 N. E., 47; 5 L. R. A., 213; 14 Am. St. Rep., 455; *Northwestern Cordage Co. v. Rice,* 5 N. D., 432; 67 N. W., 298; 57 Am. St. Rep., 563; *Hawkins v. Pemberton,* 51 N. Y., 198; 10 Am. Rep., 595.

The contention (exception 1) that the letter written by plaintiff on July 15, 1920, referring to the exchange of telegrams of that date, constituted a part of the contract, cannot be sustained. The contract was embodied in the plaintiff's telegram of July 15, offering the Big Seam mine-run coal, and in the defendant's telegrams, the one of the same date accepting that offer, and the other of July 22, accepting additional cars "as per last order." The letter, written after the consummation of the first order, was not an integral part of the contract, and neither party was entitled to resort thereto for the purpose of adding to, contradicting, or varying the terms of the contract made. But the letter was clearly admissible in evidence both under the principle of interpretation (Wigmore on Evidence, §§ 2458–2478), and as a declaration against interest. "Words used must be translated into things and facts," and the meaning to be attached to the descriptive words, Big Seam mine-run coal, was the vital issue in this case. The letter was admissible for the very purpose it was written, to make clear or clearer the meaning or sense of the words used in the contract. *Murray v. Railroad Co.,* 64 S. C., 520, 539; 42 S. E., 617. If upon the trial any different meaning was sought to be attributed by plaintiff to such descriptive words the letter was admissible as a declaration against interest.

A careful examination of the exceptions (7th, 8th and 9th) not disposed of by the foregoing discussion disclosed• no reversible error. The rulings complained of involved a proper exercise of the trial Judge's broad discretionary power as to appraising evidence from the standpoint of relevancy, and the exceptions are overruled.

For the reasons stated, the judgment of the Circuit Court is reversed, and a new trial ordered.

Reversed.

MESSRS. JUSTICES WATTS, FRASER, and COTHRAN Concur

MR. CHIEF JUSTICE GARY did not sit.