16086

RELIANCE VARNISH CO. v. MULLINS LUMBER CO.
(48 S. E. (2d) 653)

*Messrs. Woods & Woods,* of Marion, for Appellant,

*Messrs. C. W. Muldrow* and *John M. Scott,* of Florence, for Respondent,

June 8, 1948.

OXNER, J.: This action was commenced in April, 1943, for the recovery of the sum of $1,235.05 which respondent, Reliance Varnish Company, alleged was the balance due for varnish and finishing materials furnished to appellant, Mullins Lumber Company, between April 22, 1941, and January 8, 1942, and for the recovery of the further sum of $455.00, representing the value of certain drums used in shipping material to appellant which respondent alleged were never returned or accounted for. Appellant admitted in its answer the purchase of the materials and payments thereon as set forth in the complaint, but alleged that other payments had been made in an amount sufficient to discharge the balance alleged to be due. It denied being under any obligation to return the drums. As a further defense, appellant alleged that after using a portion of this material, it was found to be wholly unsuitable and worthless for the purpose for which it was sold and that thereafter it sent to respondent a check covering the portion actually used and returned the remainder, which resulted in the extinguishment of respondent's claim. As a further defense, it was alleged that respondent warranted the material to be sound and suitable for the purpose for which it was bought and that this warranty was breached. Appellant also set up a counterclaim in which it alleged that some of this material was applied to furniture manufactured and sold to its customers and on account of the defective quality of the material, appellant had to make large refunds to its customers or allow deductions from the agreed price of furniture sold to them. It was further alleged that the reputation and good will of appellant in the furniture trade had been damaged. Judgment was sought on the counterclaim in the sum of $3,000.00.

The case was tried in April, 1947. At the conclusion of all the testimony, respondent made a motion for a directed verdict for the full amount of its claim and also moved for a directed verdict in its favor on appellant's counterclaim.

Appellant moved for a directed verdict in its favor as to respondent's account upon the ground that it had tendered full settlement of the controversy by sending to respondent a check for $392.35, covering the cost of the material actually used, and returning the balance, and that respondent accepted the check but refused to receive the returned merchandise. The Court denied appellant's motion and granted that of respondent for the amount of the account, but refused respondent's motion as to appellant's counterclaim. The case was thereupon submitted to the jury solely on appellant's counterclaim and resulted in a verdict in favor of the respondent for the sum of $1,690.05, representing the amount of the account and the value of the drums. The verdict of the jury necessarily included a finding against appellant on its counterclaim.

We shall first determine whether the Court erred in granting respondent's motion for a directed verdict for the full amount of its claim and refusing appellant's motion.

Respondent has been engaged in business at Louisville, Kentucky, for a number of years, selling its products almost exclusively to furniture manufacturers. The formula and color of the varnish or stain are made to meet the particular needs of the customer. The type of material selected depends to some extent on the kind of wood used and the pattern of furniture to be manufactured. It frequently happens that the furniture maker, after observing the result produced by a certain material, desires to change the formula or color in some particular so as to produce a slightly different color or result. It is then necessary to change the formula to meet the wishes of the customer. Respondent keeps in the field service managers for the purpose of making such changes, demonstrating its materials, and observing the mechanical layout of the customer's finishing room. It constantly receives suggestions and criticisms from the customers, which are called "production complaints" and are attended to by the service manager. Even though the

material is of the proper type, unless correctly applied the result is not satisfactory. It is necessary that its application be skilfully supervised by the furniture manufacturer.

Appellant was formerly engaged in the lumber business. About 1932 it commenced manufacturing furniture. For seven or eight years appellant had been buying varnish and other finishing material from respondent and during this period also made purchases from other companies, although it claims that during 1941 the major portion of its supply came from respondent. Complaints were registered from time to time which appellant says were usually temporarily remedied by respondent's service manager. Frequently the service manager changed the formula in order to obtain a better result. Appellant's testimony was to the effect that the service manager assured it on each occasion that there would be no more trouble, but during 1941 the matter became serious; that during the summer of that year it was necessary on some occasions for the service manager to visit its plant as much as twice a week; and that finally during the fall of 1941 the trouble reached such proportions that appellant was forced to discontinue the use of respondent's product and secure its materials elsewhere.

Appellant's finishing room foreman who was experienced in this line of work, testified that at first the trouble was of a minor nature but during the latter part of 1941 it went "beyond the control" of respondent's service manager; "that the varnish wouldn't dry" and when put "in operation in the rubbing room, the varnish would soften up"; that respondent's representatives used various ingredients to remedy the situation and assured them that there would be no more trouble, but after making repeated efforts to solve the difficulty, the service manager said during the fall of 1941, "The d— material wasn't any. good, it wouldn't work"; that appellant then discontinued its use, commenced purchasing from another company, and later shipped to respondent all material which had not been used (The rec-

ord shows that this material was not shipped until October, 1942). This witness admitted on cross-examination that appellant also had some difficulty with material furnished by other companies and that at least on one occasion the varnish of another company was turned over to respondent to be "reworked." His explanation of the delay in returning the unused materials to respondent was that respondent's sales manager stated that he could get some ingredients from respondent's laboratory which would cause the materials "to work out but it didn't come", and that the product was left at appellant's plant pending an adjustment.

Respondent's service manager and sales manager did not testify. However, a former employee of appellant, who was superintendent of its finishing room in 1939 and during a part of 1940 and 1941, testified for respondent in reply that its materials were satisfactory and caused no more trouble than those furnished by the other companies.

Appellant has paid for all material bought from respondent prior to April, 1941. The total purchases between that month and January, 1942, amounted to $3,877.27. Respondent wrote appellant in November, 1941, calling attention to the fact that it had not paid for the May shipments and the following month again wrote appellant stating that it was imperative that the account be straightened out. A few days later appellant inquired of respondent whether it would be satisfactory to send "check for $1,000.00 and 45- and 90-day notes for the balance". It appears that four payments of $500.00 each were made between March 6 and September 8, 1942. On October 9, 1942, respondent wrote appellant insisting that further payments be made so as to clear up the account before the end of the year. The president of appellant replied on October 13th, stating that his son, who had handled this transaction as vice-president and treasurer of the company, had been in the Service since February of that year but that he did not personally feel that the company owed respondent anything be-

cause of losses sustained on account of the defective materials. He further stated that the company had on hand "some nine to a dozen drums" of respondent's material which it had been unable to use for any purpose, and made the proposal that if respondent would permit the company to return these drums as a credit on the account, it "would be glad" to send check for the balance. On October 16th, the president of respondent replied that appellant's letter of October 13th was the first intimation he had of any claim that the materials were defective and made the following proposition: "If you have any of our material on hand that is unopened, and uncontaminated, you may be sure that we would be more than glad to receive it for credit, if it is returned to us by prepaid freight." On October 26th appellant wrote respondent as follows:

"We are enclosing herewith our check for $392.35, together with an invoice for $1,235.05, which pays in full our indebtedness to you, as per your statement of October 1.

"Your action in this matter is greatly appreciated and goes a long way towards settling satisfactorily the difference between us."

Respondent accepted and deposited the check and on October 29, 1942, replied as follows:

"We have for acknowledgment your letter dated October 26th.

"I wish to call your attention to the fifth paragraph of my letter of October 16th, wherein I advised that we would be more than glad to issue credit for any materials that were in 'unopened' packages, and 'uncontaminated'.

"We therefore are not accepting your debit memo dated October 23d until such time as we have thoroughly investigated the materials in question. Certainly anything in a partially filled container cannot be accepted, and should not have been returned. We have a retained sample of all shipments that have been made to you, and should any of these

materials fail to be the equivalent of our retained samples on account of contamination, that would prevent our issuing credit.

"I should like to have you wire me upon receipt of this letter that this is thoroughly understood. Otherwise we cannot accept the materials in question."

No reply was received until November 3, 1942, at which time the president of appellant wrote respondent that he regarded the letter of October 29th as "insulting"; that the open packages returned had been opened by respondent's own representatives; and that there was no reason for refusing to accept the shipment. He concluded by stating: "Whether you accept them, or not, is entirely up to you and for our part the matter is closed."

The returned material was left in possession of the carrier and nothing further transpired between the parties until this action was commenced.

Respondent says that the Court was warranted in directing a verdict in its favor for the amount of the account upon three grounds: (1) That by retaining the materials for more than a year after the last shipment was made and during this period paying over $2,000.00 on the account, appellant waived as a matter of law any claim that the materials were defective or of inferior quality; (2) that appellant pleaded an express warranty and failed to prove it, and could not rely upon an implied warranty; and (3) that appellant admitted receiving the merchandise and failed to prove its defense of payment. These questions will be discussed in the order stated.

It is well settled that where the defect or inferiority of the goods is obvious, or may be discovered by reasonable inspection or examination before acceptance, the purchaser by accepting the goods, waives the right to allege any inferiority of quality which is obvious to him; but if the defect or inferiority is not known and is not dis-

coverable by reasonable inspection before delivery, the purchaser must be given a reasonable opportunity for a practical and effective inspection or examination. When he discovers the goods to be defective, he must act with promptness. If after discovery of the defect the purchaser does not promptly notify the seller and offer to rescind by returning the goods or placing them at the seller's disposal, there is an acceptance which is evidence of waiver of any objection to the inferiority of the goods. The question of waiver is ordinarily one for the jury under all the facts and circumstances of the particular case. *Southern Coal Co. v. Rice,* 122 S. C. 484, 115 S. E. 815; *Southern Brick Co. v. McDaniel,* 187 S. C. 243, 196 S. E. 893.

If the materials involved in this controversy were defective and unsuitable for the purpose for which they were purchased, such fact could not have been determined at the time of delivery and could only have been discovered when used. There was abundant evidence to go to the jury on the question of whether the materials were unfit for appellant's use. It further appears that respondent through its sales manager and service manager was promptly notified of the complaints made by appellant. Our problem is whether the retention of these materials by appellant for approximately a year after discovery of their alleged unsuitable condition before offering to rescind the sale and meanwhile making substantial payments on the account constitute as a matter of law a waiver of any objection to the inferiority of the materials. Appellant seeks to explain these circumstances by asserting that shortly after discovering that the materials were worthless, its vice-president and treasurer, who was in charge of the transaction, entered the service and the president was unfamiliar with the matter; that the full effect of the use of these defective materials was not immediately apparent; that respondent's service manager continued to make assurances that the situation could and would be remedied; and that a certain portion of the ship-

ment was held because the service manager stated that he desired to add other ingredients to some of the materials, which was never done. Respondent contended that appellant discontinued the use of its products because it refused to extend further credit and that no complaint was made by appellant until it commenced pressing for payment of the account.

We think under all the circumstances the issue of waiver should have been submitted to the jury. The case of *Williamson Heater Co. v. Paxville School District et al.*, 102 S. C. 295, 87 S. E. 69, tends to support this conclusion. The plaintiff in that case sold to the defendant a heating plant and after it had been installed and accepted, the defendant executed a note as part payment of the purchase price. When the note became due defendant requested an extension of time for payment and made no complaint that the heating plant was unsatisfactory. About a year after the installation the defendant complained for the first time that the plant was defective and failed to give satisfaction. Suit was brought on the note and the defendant pleaded failure of consideration and interposed a counterclaim for damages. The trial resulted in a verdict for defendant on its counterclaim. The Court held that the question of waiver of the defective condition of the heating plant was properly submitted to the jury and affirmed the judgment. In discussing this question, the Court said: "It is doubtless true that, where a buyer has the opportunity to inspect his purchase before its acceptance, he may be held to have waived any defects that were apparent; but here the facts complained of could be made to appear only by actual use. After actual use, the defects now complained of were not called to the attention of the plaintiff for a long time; but this is explained by the defendants by saying that they were making every effort to make a fair trial and give the plant the fullest opportunity to do its work under its

guarantee—*i. e.,* that it would satisfactorily heat the building."

We next consider respondent's contention that appellant pleaded an express warranty and therefore could not rely on an implied warranty. Appellant disavows any intention to assert the breach of an express warranty and made no effort to prove such a warranty. After a careful examination of the answer, we are inclined to think that an express warranty is not pleaded. But if the fourth defense is construed as alleging the breach of an express warranty, it is clear that a breach of an implied warranty is also pleaded in the third defense. No effort was made to require appellant to elect. It was respondent who sought to prove an express warranty by offering in evidence the form of invoice claimed to have been used in shipping these materials to appellant, which contained the following stipulation in fine print: "Our guarantee of quality does not extend beyond taking goods back at invoice price if claim is made within ninety days from date of shipment." Both the president and vice-president and treasurer of appellant testified that they had not previously observed such stipulation and it was never called to their attention. It is so located as to easily escape attention. Certainly it could not be said as a matter of law that appellant should have been aware of the stipulation. "The rule in this state, is that for such a clause to be applicable in any case it must be shown that it was brought to the attention of the purchaser." *Stevenson v. B. B. Kirkland Seed Co.,* 176 S. C. 345, 180 S. E. 197, 201.

There was an implied warranty that the materials sold were reasonably adapted to the purpose for which they were, with the knowledge of respondent, purchased by appellant. *Patterson v. Orangeburg Fertilizer Co. et al.,* 117 S. C. 140, 108 S. E. 401. The issue as to whether there had been a breach of such implied warranty should have been submitted to the jury.

Respondent's remaining contention as to this phase of the case is that appellant admitted receiving the merchandise and failed to prove its defense of payment. Appellant does not claim that there was a cash payment of the balance alleged to be due for the materials. Its contention is that the goods were unsuitable and worthless for the purpose for which they were purchased and that they had been returned, along with a check for the portion used, in settlement of the account.

The foregoing considerations do not apply, however, to the item of $455.00, representing the value of 46 drums used in making shipments to appellant. In its answer appellant "admits that it has failed to return and account to the plaintiff for the drums", but denies there was any obligation imposed upon it to do so. It further alleges that if any such obligation existed, it "has been extinguished by defendant or waived by the plaintiff." Appellant offered no testimony to establish waiver as to this item. Respondent's testimony was to the effect that the materials were shipped under an agreement with appellant that if the drums were not returned or accounted for, appellant would be liable for their value and that this was the agreement had with all customers. This testimony is uncontradicted. It follows that there was no error in directing a verdict for respondent against appellant for this item.

We shall next consider whether the Court below erred in refusing appellant's motion for a directed verdict as to the account upon the ground that the check for $392.35, which respondent accepted and cashed, together with a return of the unused materials, constituted an accord and satisfaction. We do not think this is the effect of the transaction, although it must be conceded that the question is not free from difficulty.

The correspondence heretofore set forth discloses that appellant wished to return "some nine to a dozen drums" of unused materials as a credit on the account. Respondent

agreed to accept any that was "unopened and uncontaminated." Appellant thereupon returned 23 drums of material, some of which had been opened, and forwarded to respondent an invoice covering the shipment along with a check for the balance of the account. Respondent deposited the check but refused to accept any partially filled containers and further declined to accept the balance of the materials unless a check with the samples showed they had not been contaminated. Respondent asked that appellant wire immediately whether it was agreeable for the materials to be received under these circumstances. Appellant refused to agree to the conditions named and took the position that respondent had to accept the materials unconditionally as a credit on the account.

It is well established that "an 'accord and satisfaction' must contain the elements of contract, and there must be a meeting of the minds." *Redmond v. Strange et al.,* 203 S. C. 35, 26 S. E. (2d) 16. It is obvious from this correspondence that there was never any agreement as to the terms upon which the materials would be received. The check which respondent deposited represented the value of the materials which had been used. It was not to pay for any part of the returned goods. The letter enclosing the check does not clearly indicate that the receipt of the returned materials and the acceptance of the check were to be regarded as an individual transaction. The statement in the letter that the invoice and check "pays in full our indebtedness to you" was doubtless made in anticipation that respondent would accept the returned goods as a credit on the account. If acceptance of the check was conditioned upon the unqualified acceptance of the returned goods, such condition should have been plainly stated to avoid any misunderstanding. We do not think respondent understood, or should have known, that if the check was accepted, it was unconditionally bound to accept the returned materials in satisfaction of the balance of the account. In *Redmond v. Strange et al., supra,* the Court quoted the following from

American Jurisprudence: "In order that the acceptance of the check or remittance shall operate as a full discharge, the condition that it is to be accepted in full satisfaction of the pending claim or obligation must be expressly made or the circumstances must be such as to indicate clearly to the creditor that it is so sent."

In *Hamburger v. Economy Department Store,* 54 S. D. 65, 222 N. W. 603, the defendant purchased from the plaintiff 669 pairs of shoes. On receipt of the shipment, defendant returned 72 pairs and received credit on his account at the invoice price. About a month later, after repeated demands for payment, defendant returned 258 pairs of the shoes, claiming that they did not conform to sample, notified plaintiff of the return shipment, and stated that the remittance for the balance of the account would follow in a few days. Plaintiff immediately wired the defendant that it could not accept a return of the shoes. After receipt of this telegram, the defendant sent to the plaintiff a statement in which he debited himself with the amount of the entire bill and credited himself with the returned merchandise at invoice price, accompanied by a check for the balance shown to be due. Upon this statement was the following remark: "Closes Account to date." The plaintiff refused to accept the shoes, but cashed the check and demanded payment of the balance, which was the invoice price of the 258 pairs of shoes that defendant attempted to return. Defendant refused to pay and plaintiff brought suit. The Court held that there was no accord and satisfaction under the above circumstances. We think the instant case involves a strikingly similar situation. In further support of our conclusion, see *Robinson et al. v. Marachowsky,* 184 Wis. 600, 200 N. W. 398.

We next consider the judgment rendered on appellant's counterclaim. As previously stated, respondent made a motion for a directed verdict upon the ground that the testimony as to damages was entirely too in-

definite, uncertain and speculative to warrant a recovery on the counterclaim. The motion was refused and the issues relating to the counterclaim submitted to the jury, resulting in a verdict in favor of respondent. Appellant seeks a new trial as to the counterclaim upon the ground that the Court erred in several particulars in charging the jury. It is claimed that the Court stated "too broadly" the duties of the purchaser of merchandise claimed to be defective. The instructions given were substantially in accord with the rules stated in *Southern Coal Co. v. Rice, supra,* 122 S. C. 484, 115 S. E. 815. It is also contended the Court erred in charging the jury that appellant could not recover "for alleged damages to his good name and reputation as a dealer and his standing and reputation with his customers." Assuming, without deciding, that this constituted a proper element of damage, there was no proof that appellant sustained damage in this respect. It is said that under the charge appellant was limited to the recovery of only such damages as were proved with exactness, whereas it was only required to show "a basis for a reasoned conclusion". We doubt if the charge, considered as a whole, is susceptible to appellant's interpretation. But in any event, if appellant desired further instructions as to this phase of the case, such fact should have been made known at the conclusion of the charge when the Court inquired of counsel if anything further was desired.

There is another reason why the verdict on the counterclaim must be upheld. The testimony fails to establish with a reasonable degree of certainty that appellant sustained any damages. The only evidence of damages offered by appellant was the testimony of its bookkeeper to the effect that from 1939 to 1944, inclusive, it made refunds or allowed credits to its customers on account of defective varnishing as follows:

| | |
|---|---|
| 1939 | $4,635.44 |
| 1940 | 3,271.76 |
| 1941 | 4,192.99 |

| | |
|---|---|
| 1942 | 2,539.62 |
| 1943 | 1,235.37 |
| 1944 | 33.59 |

This witness admitted that in some instances the furniture rejected by the customer for which credit was allowed was later returned to appellant, reworked, and resold. No effort was made to show that the credits were allowed solely on furniture finished with respondent's materials. No explanation is made of the fact that refunds during 1939 were larger than those during 1941, the year in which appellant claims that the trouble with respondent's materials first became serious. Appellant admits that it purchased more material from respondent in 1939 and 1940 than it did in 1941. It will be further observed that although appellant discontinued the use of respondent's material during the latter part of 1941, substantial refunds were made in 1942 and 1943. It is suggested in appellant's argument that some of these refunds may have been due to furniture finished with respondent's materials during a prior year but there is no basis for such a suggestion in the testimony. We think it more reasonable to conclude, as some of the testimony tends to indicate, that appellant had to make frequent refunds regardless of whose material was used until war conditions brought about a scarcity of furniture, as well as other manufactured products, when all merchants were eager to get anything to sell and were not disposed to make complaints. Any conclusion that the refunds mentioned represent damage sustained on account of defective materials furnished by respondent could only be based on pure speculation and conjecture. The only evidence that appellant sustained any damage was some testimony to the effect that it was necessary on a few occasions to rework some of the furniture finished with respondent's materials, but the testimony fails to show the cost of doing so.

The remaining exceptions of appellant do not require extended discussion.

It is asserted that the Court erred in refusing to allow appellant the right to open and reply in testimony.

There is no merit in this exception. Appellant in its answer did not admit the plaintiff's cause of action and rely solely on its affirmative defenses. In fact, it expressly denied that there was any obligation upon it to either pay for or return the drums in which the materials were shipped and as to the account, denied that there was a balance due as set forth in the complaint and alleged that payments other than those mentioned had been made. See Rule 58 of the Circuit Court and the cases cited thereunder in the Code. It should be added that appellant was allowed the right to open and close in argument to the jury on the issues raised by the counterclaim.

It appears that respondent several years prior to the trial took the deposition of its president but later decided to offer him as a witness at the trial. The Court refused to permit the introduction of this testimony taken *de bene esse* but allowed the witness to use it for the purpose of refreshing his memory as to certain transactions. Appellant contends that the Court erred in allowing this to be done. We think it was permissible. Morever, the deposition was used by the witness in refreshing his memory only as to matters which were either undisputed or immaterial. It is further contended that the Court erred in allowing this witness to testify to certain statements alleged to have been made to him by appellant's sales manager upon the ground that the statements were beyond the scope of the latter's authority. The statements related the matters admitted by appellant's own witnesses and there could have been no prejudicial error in this respect.

Respondent's president testified that they had received no complaints from other manufacturers who had used the same type of merchandise. Appellant's counsel immediately moved to strike this testimony but the Court refused to do so. The testimony was probably incom-

petent, particularly in view of other testimony given by this witness to the effect that the color and formula of the varnish and stain were made to suit the particular needs of the customer and even then, it was frequently necessary to change the color or add other ingredients after the material was put to actual use. On the admissibility of this line of testimony, see *Kauffman Milling Co. v. Stuckey,* 37 S. C. 7, 16 S. E. 192; *Livingston v. Reid-Hart Parr Co.,* 117 S. C. 391; 109 S. E. 106; note in L. R. A. 1915-B, page 626. But under all the circumstances which we need not detail, we do not think the error complained of was prejudicial. However, similar testimony, if offered, should be excluded on another trial when the issue of breach of implied warranty is tried.

From the foregoing conclusions it follows: (1) The judgment on appellant's counterclaim is affirmed; (2) Respondent is entitled to judgment against appellant in the sum of $455.00, representing the value of the drums which appellant failed to return; (3) So much of the judgment of the Court below as allows respondent to recover the sum of $1,235.05, representing the value of the materials sold to appellant, is reversed; (4) The case is remanded for the purpose of allowing respondent to enter judgment against appellant in the sum of $455.00 and for the further purpose of trying the issue of breach of implied warranty in the sale of the finishing materials mentioned in the complaint.

BAKER, C.J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.