278

WXIX, INC., Plaintiff and Respondent, v. SCOTT HEATING & AIR CONDITIONING COMPANY, INC., Defendant and Appellant: LONG, Defendant and Respondent.

*January 31—February 27, 1968.*

For the appellant there was a brief by *Brady, Pachef-sky & Sullivan* of Milwaukee, and oral argument by *Robert J. Brady.*

For the respondent there was a brief and oral argument by *Nancy A. Simos* of Milwaukee.

WILKIE, J.  There is no doubt that the defendant breached the contract.  The whole question involves determining station WXIX's damage.  The particular issues raised on this appeal are:

1. Are damages upon the termination of a television advertising contract to be computed on a short-rate basis according to a television station's rate card where the contract condition referring to such card is hardly legible?

2. If not, how are such damages to be computed?

3. Was there evidence to support the trial court's finding that the plaintiff incurred production costs of $77 to be charged to defendant?

We recognize the need in the television program production industry for the use of the short-rate device to arrive at some liquidated figure for damages done to a producing station by reason of the wrongful and premature termination of an advertising contract. This is an established practice in the industry.

In the instant case, the plaintiff station seeks to compute damages on the basis of a rate card which confusingly seeks to provide a formula for determining the advertiser's liability on a short-rate basis calculated to cover that portion of the advertising contract prior to the termination date. The printed form contract between the parties contains a printed condition spelling out the procedure for terminating the contract and prescribing that the advertiser on termination "will pay station at earned rate according to station's rate card on which this contract is based." That condition is printed in such small type it is hardly legible. The particular provision on "termination and renewal" was not called to the attention of Harlan Long, one of the respondents who was representing the advertiser (Scott) at the time and signed the contract on Scott's behalf.

We have held similar small-print provisions ineffective in the case of a would-be disclaimer in an invoice [1] and as part of a parking-lot ticket.[2]

[1] *Calumet Cheese Co. v. Chas. Pfizer & Co.* (1964), 25 Wis. 2d 55, 130 N. W. 2d 290.

[2] *O'Brien v. Isaacs* (1962), 17 Wis. 2d 261, 116 N. W. 2d 246.

This particular condition is one of the most important in determining the rights of the two parties. Yet, it does not attract attention. In fact "De-emphasis seems the motif rather than emphasis."[3] If the television station sought precision in the formula for short-rate computation of the programs already produced the least it could have done was provide a contract with conditions printed in such a way that they could have been read without a great deal of difficulty.

The general rule is that when a case is tried to a trial court without a jury, its findings will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence.[4] But this court is not so bound by a finding of the trial court which, as here, is based upon undisputed evidence when that finding is essentially a conclusion of law.[5]

We therefore conclude that the finding that the disputed condition entitled "Termination and Renewal" was part of the contract is predicated on the error of law.

Then, too, the rate card itself is vague and subject to several interpretations. It is 7½ by 8½ inches, with

[3] *Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N. J. 358, 366, 161 Atl. 2d 69; 75 A. L. R. 2d 1. Other jurisdictions support this view, *e.g. Reliance Varnish Co. v. Mullins Lumber Co.* (1948), 213 S. C. 84, 97, 48 S. E. 2d 653, and *Cutler Corp. v. Latshaw* (1953), 374 Pa. 1, 7, 97 Atl. 2d 234. In a very recent case, *Egan v. Kollsman Instrument Corp.* (1967), 21 N. Y. 2d 160, 234 N. E. 2d 199, the New York Court of Appeals held that small, almost unreadable print on an airline ticket warning passenger of carrier's liability limit under Warsaw Convention did not constitute adequate notice entitling it to assert Convention's liability limit as defense to death action. The court concluded: "In our judgment, a statement which cannot reasonably be deciphered fails of its purpose and function of affording notice and may not be accepted as the sort of statement contemplated or required by the Convention."

[4] *Druml Co. v. Capitol Machinery Sales & Service Co.* (1965), 29 Wis. 2d 95, 138 N. W. 2d 144.

[5] *Boutelle v. Chrislaw* (1967), 34 Wis. 2d 665, 150 N. W. 2d 486.

one-half of the card devoted to announcements (inapplicable here because defendant had contracted for advertisements during a specific program as contrasted to announcements). The other half of the card is devoted to programs, *i.e.*, presumably the short rates to be applied on the termination of contracted programs. One section of the card is devoted to rates involved in the cancellation of Class "AA" programs (run from 6 p. m. to 11 p. m. daily). The remaining section lists different short rates for programs one hour, half hour, quarter hour, ten minutes, or five minutes in length. To the left of the listed times of programs is an unlabeled column containing the figures "1x, 13x, 26x, 39x and 52x." This part of the rate card has been subject to at least three interpretations during this litigation.

In suing, plaintiff's complaint construed the rate card as providing for total liability of the advertiser computed on the basis of 61 programs at $110 (two sponsors of a half-hour show or a quarter hour apiece) or a total of $6,710. Under this interpretation the defendant ended up paying twice the money he would have been obligated for if he had finished out the contract. The trial court correctly concluded that such a construction of the contract was "unreasonable and absurd."

The trial court found that the rate of a half-hour show to be shown at least 52 times (52x) was $170; that with three advertisers splitting the cost, the charge to each would be $56.66 per day; that defendant's program was broadcast 52 times, leading to a total liability of $2,946.32 (which, subject to deductions for advertising commissions and cash payments and an addition for production costs, left a balance of $2,255.40).

This interpretation would lead to the defendant's liability for almost as much as for the completed contract. If the advertiser did not have the good fortune of sharing his projected liability with other advertisers, his liability could be much more. We think that this inter-

pretation is based only on pure speculation. Defendant, on oral argument, argued for still a third speculative interpretation of the card, urging that the short rate be computed on the basis of the half-hour program being repeated twenty-six weeks (26x), or $190 per week. Under this interpretation $190 would be split three ways and the resulting per-advertiser cost would be $63.33 per week, which, when multiplied by the seven weeks unpaid for, would be $443.31, plus production costs.

At the trial and in his brief, defendant admits to a liability based on the weekly rate of $125 for the seven weeks during which the broadcasts were made but with no payment therefor, or $875. In other words, under defendant's interpretation of his liability as presented on oral argument, defendant would be paying barely one half as much as the contract called for as a basic rate. His liability would have been much greater even under this interpretation if there were only one or two advertisers. We think that this interpretation is based on speculation and we must conclude that the rate card is ambiguous on the basic question of whether the short rate is to be determined on the basis of a charge per program (52 or more being shown) or a rate per week (this contract calling for a twenty-six week series of advertisements). Nothing in the intrinsic evidence clears that ambiguity.

Thus, neither the printed conditions nor the rate card are an enforceable part of this particular contract and on termination the parties must fall back on the contract itself which calls for twenty-six weeks of advertisements and defendant's liability is computed on the basis of seven weeks unpaid at the weekly rate of $125, or $875 plus production costs. There was no proof at the trial of any further damage suffered by the plaintiff as a result of defendant's breach of the advertising contract.

Defendant is also liable for the full $77 as production costs. Plaintiff witness, Herbert Wilk, testified that the

charges for slides, card and film costs were incurred and billed to the defendant and payment was refused. These charges were alleged in the plaintiff's bill of particulars. Defendant Harlan Long admitted to the fact that such costs were incurred (though he did not specify the amount thereof). The trial court found that production costs amounted to $77. That finding is not contrary to the great weight and clear preponderance of the evidence and is therefore affirmed.

*By the Court.*—Judgment modified by reducing plaintiff's recovery to $932, and, as modified, affirmed; costs on this appeal to appellant; cause remanded for further proceedings.